DuaneMorris®

WILLIAM C. HEUER
DIRECT DIAL: 212.692.1070
E-MAIL: wheuer@duanemorris.com

www.duanemorris.com

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
BOCA RATON
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

August 14, 2009

**BY HAND DELIVERY**

Hon. Stuart M. Bernstein
United States Bankruptcy Court for the
Southern District of New York
One Bowling Green
New York NY 10004-1408

Re:    In re New York Skyline, Inc., Chapter 11 Case No. 09-10181 (SMB)

Dear Judge Bernstein:

Our firm is co-counsel to Empire State Building Company L.L.C. and Empire State Building, Inc. (together, "ESB")[2] in the New York Skyline, Inc. chapter 11 bankruptcy case. At argument (August 5, 2009) on the Debtor's motion to assume a lease and license agreement between ESB and the Debtor, Your Honor invited the parties to submit letter briefs regarding the question of whether the Debtor's assumption of the lease and license agreement, bars the Debtor's claim for rescission based on "ratification" or similar doctrines.[1] This letter addresses that question.

Discussion

The power to rescind a contract is an avoidance power. 1 CORBIN ON CONTRACTS ¶ 1.6 (Rev. ed. 1993).[2] Where a party has been misled into executing a contract and has a claim in the nature of fraud in the inducement, the contract is voidable by that party. Id. When a contract is voidable, the party holding the avoidance power can elect how it chooses to proceed; it can either (i) seek avoidance by rescission or other means, or (ii) determine to nonetheless be bound by the contract. Id.[3] This election of remedies determines (i) which actions can be asserted by the party with the avoidance power and (ii) the nature of the damages which can be sought. If the party

---

[1] The lease and license agreement are governed by New York law.

[2] Relevant excerpts from Corbin on Contracts are annexed hereto as Exhibit A.

[3] See Schiffer v. Dietz, 38 Sickels 300, 83 N.Y. 300, 1881 WL 14705 at *3 (1881); Clearview Concrete Prods. Corp. v. S. Charles Gherardi, Inc., 88 A.D.2d 461, 466, 453 N.Y.S.2d 750, 754 (2d Dep't 1982) (affirmance of contract precluded rescission); Roome v. Jennings, 2 Misc. 257, 21 N.Y.S. 938, 939-40 (Ct. Comm. Pleas N.Y. County 1893) (noting election either to seek rescission or to leave contract in force and seek damages); Soft Classic S.A. De C.V. v. Hurowitz, 444 F.Supp.2d 231, 238-39 (S.D.N.Y. 2006) (discussing election of remedies); In re Schick, 232 B.R. 589, 595 (Bankr. S.D.N.Y. 1999) (Bernstein, C.J.) (noting the two options which are available).

with the avoidance power seeks rescission, it cannot then sue for breach of contract damages because the basic premise of rescission is that an enforceable contract does not exist. If this party chooses instead to be bound by the contract regardless of the fact that it has the power of avoidance, it can sue on breach of contract theories but cannot thereafter seek rescission, on similar reasoning.[4]

The propositions noted above are a matter of black-letter law. The Restatement of Contracts states:

§ 380. Loss of Power of Avoidance by Affirmance

* * *

(2) The power of a party to avoid a contract for mistake or misrepresentation is *lost* if after he knows or has reason to know of the mistake or of the misrepresentation if it is non-fraudulent or knows of the misrepresentation if it is fraudulent, *he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance.*

3 REST. OF THE LAW, CONTRACTS (2d) § 380(2) (1979) (emphasis supplied).[5]

Comment (a) to this section of the Restatement expands upon what constitutes the "affirmance" or "ratification" of a contract which was voidable. The Restatement states:

a. *Ratification by affirmance.* A party who has the power of avoidance may lose it by *action that manifests a willingness to go on with the contract.* Such action is known as "affirmance" and has the effect of ratifying the contract. The rules stated in this Section is a special application of that stated in § 85, under which a promise to perform a voidable duty is binding. On ratification, the affirming party is bound as from the outset and the other party continues to be bound.

3 REST. OF THE LAW, CONTRACTS (2d) § 380, comment (a) (1979) (emphasis supplied). Indeed, the mere act of accepting the benefits of a contract subsequent to the discovery of an alleged

---

[4] Similarly, where damages are available and provide an adequate remedy, a rescission claim is barred. *See New Paradigm Software Corp. v. New Era of Networks, Inc.,* 107 F. Supp.2d 325, 329 (S.D.N.Y. 2000) ("it is well-settled that 'rescission is an equitable remedy which will not be granted unless Plaintiffs lack an adequate remedy at law.'"), *and cases cited therein.* Here, the Debtor has alleged claims for damages arising out of the very same agreement which the Debtor seeks to rescind. The fact that the Debtor has alleged its damages claims as alternative forms of relief is of no moment. Rather, the mere fact that damages are available requires dismissal of the rescission claim.

[5] Relevant excerpts from the Restatement of the Law, Contracts, are annexed hereto as Exhibit B.

fraud constitutes an "affirmance" within the scope of this rule.[6]

With these concepts in mind, it is evident that the Debtor's assumption of the lease and license agreement is a "ratification" or "affirmance" of those agreements.

First, it is beyond question that the Debtor has been aware of the fraud it alleges for a considerable period of time, satisfying the knowledge requirement noted above.

Second, with respect to the requirement that the Debtor manifest a willingness to continue under the terms of the lease and license agreements, there can be no serious dispute. As part of its case on assumption, the Debtor argued that it was a sound exercise of the Debtor's business judgment to assume the lease and license agreement. The Debtor analyzed its business operations in order to arrive at this conclusion; attached to the Debtor's motion were business projections and historical results which the Debtor contended supported its decision to seek assumption. The Debtor had to quantify the amount owed to ESB as "cure" and demonstrate an ability to pay what is owed as cure. Assumption of the lease and license agreement (in the rescission context) was vigorously opposed by ESB. At the August 5, 2009 hearing, the Debtor's general counsel testified regarding the Debtor's decision to assume the lease and license agreement. After hearing argument and considering the evidence presented at trial, the Court determined that assumption of the lease and license agreement was, in fact, the exercise of good business judgment by the Debtor. The Debtor also demonstrated to the Court's satisfaction that it had provided to ESB "adequate assurance of future performance." In order to make this showing, the Debtor was required to demonstrate that it could continue to perform under the terms of the lease and license agreement in the post-assumption context.

[6] *Hangzhou Silk Import & Export Corp. v. P.C.B. Intern'l Indus., Inc.*, Case No. 00-CV-6344 (RLC), 2002 WL 2031591, at *4 (S.D.N.Y. Sept. 5, 2002) ("the acceptance of benefits under a contract subsequent to the discovery of fraud constitutes affirmance of the contract . . ."); *see also Brennan v. Nat'l Equit. Life Inv. Co.*, 247 N.Y. 486, 489-90 (1928) (continuing to accept contract benefits after knowledge of fraud ratifies the contract); *Sugar Creek Stores, Inc. v. Pitts*, 198 A.D.2d 833, 834, 604 N.Y.S.2d 407, 409 (4th Dep't 1993) (accepting benefits is affirmance); *Agristor Leasing-II v. Pangburn*, 162 A.D.2d 960, 961, 557 N.Y.S.2d 183, 185 (4th Dep't 1990) (accepting benefits under contract after knowledge of fraud constitutes affirmation of the lease); *Bank of Am., N.A. v. Farley*, Case No. 00-CV-9346 (DC), 2002 WL 5586, at *4 (S.D.N.Y. Jan. 2, 2002) (ratification by accepting benefits).

This line of reasoning – that continued acceptance of benefits bars a claim for rescission – is consistent and works in tandem with the rule that where damages are available and adequate, claims for rescission are barred. *Rudman v. Cowles Commc'n's, Inc.*, 30 N.Y.2d 1, 13-14, 330 N.Y.S.2d 33, 43 (1972) (finding rescission unavailable as a matter of law where damages were available and adequate); *Vatnikoff v. Mascardo*, 63 A.D.3d 473, 475, 882 N.Y.S.2d 9, 12 (1st Dep't 2009) ("rescission is an equitable defense, and plaintiff had an adequate remedy at law for money damages."); *New Shows, S.A. de C.V. v. Don King Prods., Inc.*, 210 F.3d 355 (Table), Case No. 99-9019, 2000 WL 354214, at *2 (2d Cir. April 6, 2000) ("But since the legal remedy in this case is adequate, the equitable remedy of rescission is inappropriate."); *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp.2d 325, 329 (S.D.N.Y. 2000) (discussed *supra*, at n. 4). The Debtor in this case has alleged "substantial breach" as a ground for rescission. The threshold inquiry which must be made before even considering whether such a claim can survive summary judgment, however, is whether a remedy at law exists. Here, it does, and dismissal is appropriate.



It cannot be credibly argued that these steps taken by the Debtor do not constitute "*action [which] manifests a willingness to go on with the contract*." *See* 3 REST. OF THE LAW, CONTRACTS (2d) § 380, comment (a) (emphasis supplied). Nor can it be credibly argued that the Debtor has not indicated that it intends to continue receiving the benefits of the lease and license agreement – as it has done all along. Accordingly, by assuming the lease and license agreement under 11 U.S.C. § 365, the Debtor has "ratified" or "affirmed" those agreements under New York state law, and the Debtor can no longer pursue a claim for rescission.

That assumption of a contract is the bankruptcy equivalent of the state law concepts of ratification, adoption or affirmance of a contract is also consistent with bankruptcy case law and commentary. *Greif Bros. Cooperage Co. v Mullinix*, 264 F. 391 (8th Cir. 1920), illustrates the principle. In that case, the trustee and referee were confronted with a situation in which the debtor was party to a contract which would provide a benefit to the estate if it were "assumed." *Id.* at 393-95. In its discussion, the court stated:

> The referee in bankruptcy and the trustee, with his consent, were vested with the power and charged with the duty to accept, adopt and perform that contract, or to renounce it, and thereby to require the Greif Company to continue to perform it . . . The referee ordered the ratification, affirmance, and adoption of the contract by the trustee and directed him to perform it in accordance with the terms thereof.

*Id.* at 396-97. The court then concluded:

> The trustee and the court below accepted the benefits of the Greif Company's performance and advances, and by their action they were estopped from denying the liability of the trustee to bear the burdens of that contract and of its performance. When the trustee in bankruptcy, by order of the referee or of the court, *elects to ratify, confirm, and adopt the executory contract of the bankrupt*, he thereby assumes the liabilities of the bankruptcy thereunder, and takes the contract in the same plight in which the bankrupt held it.

*Id.* at 397 (emphasis supplied).[7]

---

[7] Some decisions qualify this rule as being applicable "in cases unaffected by fraud[.]" *See, York Manuf. V. Cassell*, 201 U.S. 344, 352 (1906). Thorough research reveals that the fraud to which this rule refers is a fraud perpetrated by *the debtor* to the detriment of creditors, such as fraudulent or preferential transfers. *Thompson v. Fairbanks*, 196 U.S. 516, 526 (1905) ("Under the present bankrupt act, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or encumbrance *of the property which is void as against the trustee by some positive provision of the act.*") (emph. supplied); see *Yeatman v. Savs. Inst.*, 95 U.S. 764, 767 (1877) (same); *In re I.S. Remson Mfg. Co.*, 232 F. 594, 596 (2d Cir. 1916)

This passage from *Greif Bros.* was cited with approval by the Supreme Court in *Thompson v. Tex. Mex. Ry. Co.*, 328 U.S. 134 (1946). *Thompson* involved proceedings under section 77 of the Bankruptcy Act. *Id.* at 137. In discussing what could be done with executory contracts under the Act, the Court stated: "[T]he bankruptcy rule is that [the trustee] takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere.*" *Id.* at 141. For this proposition, the Court cited *Greif Bros.*, *supra. Id.* at n. 7. Throughout its continued discussion, the terminology used by the Court shows that a trustee can either "adopt" or "reject" executory contracts. *See id.* at 141-144. Thus, from bankruptcy cases decided before 11 U.S.C. § 365 was enacted, it is evident that the concepts of "ratification," "adoption" and "affirmance" of a contract – the concepts relied upon in *Greif Bros.* – are what was intended when a trustee agreed to continue to be bound by a contract. This rule did not change when 11 U.S.C. § 365 was put in place:

> This provision in the new Bankruptcy Code [(§365)] is a codification of the long-standing rule that when a trustee in bankruptcy or a debtor in possession *elects* to *ratify, confirm* and *adopt* an unexpired lease, they thereby assume the liabilities of the debtor thereunder. If the debtor wishes to have the benefits of its unexpired lease it must also accept the burdens.

*See Motor Truck & Hauler Co. v. Berkshire Chem. Haulers, Inc. (In re Berkshire Chem. Haulers, Inc.)*, 20 B.R. 454, 456-57 (Bankr. D. Mass. 1982) (emphasis supplied) (citation to *Greif Bros.*, *supra*, omitted). Thus, despite the fact that the statutory term "assumption" is now used, the reality of the matter is that this term includes within its definition the concepts of ratification, adoption and affirmance of contracts.

The "ratify, confirm, and adopt" analysis from *Greif Bros.* has also been extensively cited by the treatise Collier on Bankruptcy. In the 14th edition of Collier, the treatise cited *Greif Bros.* in its discussion of the "state of the law" as it existed prior to the Chandler Act of 1938. 4A COLLIER ON BANKRUPTCY ¶ 70.43[1] (14th ed. 1978).[9] Indeed, Collier quoted *Greif Bros.* for the proposition that "[t]he referee in bankruptcy and the trustee, with his consent, were vested with the power and charged with the duty to accept, adopt and perform that contract or to renounce it[.]" *Id.* at n. 4. But Collier's reliance upon the principles set out in *Greif Bros.* did not end there. The treatise reiterated what is now an unremarkable proposition of bankruptcy law: "If the trustee, thus authorized by the court, elected to assume a contract, he was required to take it

---

("the trustee stands in the shoes of the bankrupt and takes 'the property, in cases unaffected *by any fraud of the bankrupt toward the creditors*, in the same plight and condition in which the bankrupt held it[.]'") (emph. supplied).

[8] *See H.G. Prizant & Co. v. Gust K. Newberg Const. Co.*, 12 Ill. App. 3d 1080, 1085-86 (Ill. App. 1973) (discussing, *inter alia, Thompson* and its reliance upon *Greif Bros.*). *See also Johnson v. Kurn*, 95 F.2d 629, 633 (8th Cir. 1938) (adoption of a contract in bankruptcy has "the effect of an assignment by force of law.").

[9] Relevant excerpts from the 14th edition of Collier on Bankruptcy are provided at Exhibit C hereto.

*cum onere* – that is, subject to all its provisions and conditions." *Id.* at 70.43[1] (p. 519).[10] In support of this proposition, Collier cited the "elect[ion] to ratify, confirm and adopt the executory contract" passage from *Greif Bros.* which is quoted above. *Id.* at n. 5. Moreover, in discussing the "effects of assumption or rejection" under Bankruptcy Code section 70b (*i.e.*, the state of the law post-Chandler Act), Collier stated that "[t]he trustee's assumption of an executory contract operates as a complete transfer of all the bankrupt's contractual rights and contractual liabilities therein." *Id.* at 70.43[9]. To support this proposition, Collier again cited to *Greif Bros. Id.* at n. 33. Finally, the 14th edition of Collier cited *Greif Bros.* as authority for the proposition that "[a]ssumption is irrevocable in the sense that once a contract is validly assumed by the trustee the latter is estopped from denying his liability under the contract." *Id.* at n. 38.[11]

In the 15th edition of Collier (*i.e.*, as it existed before the present-day revised 15th edition was published[12]), the treatise continued its citation of *Greif Bros. See* 2 Collier on Bankruptcy ¶ 365.01[1] at nn. 4, 5 (15th ed. 1996). Although today's revised 15th edition of Collier continues to note that a debtor or trustee can only assume an entire contract, *cum onere*, it no longer cites *Greif Bros.* for this proposition. Rather, it simply states this now-unremarkable proposition without citation. *See* 3 Collier on Bankruptcy ¶ 365.03[1] (p. 365-24) (15th ed. Rev. 2009).

More recently, the same theme – that assumption of a contract is a ratification which precludes avoidance actions – continues to apply. In *In re Superior Toy & Manuf. Co., Inc.*, 78 F.3d 1169 (7th Cir. 1996), the Court of Appeals was confronted by a situation where a trustee sought to recover avoidable transfers made to a creditor whose contract with the debtor had been assumed in the bankruptcy case. The court began its analysis by noting that a debtor's contract counter-parties are forced to continue dealing with a debtor if the debtor chooses to assume the contract. *Id.* at 1172. To protect these non-debtor contract counter-parties, Congress required "cure," and sought to "insure that a contracting party is made whole before a court can force the party to continue performing with a bankrupt debtor." *Id.* at 1174. As a result, the court found that an assumption order divests a debtor or trustee of avoidance actions based on either pre- or postpetition payments, concluding that a trustee may not prevail on both assumption and avoidance. *Id.* Although the avoidance actions noted in *In re Superior Toy & Manuf. Co., Inc.*, are statutory claims under the Bankruptcy Code (as compared with the common law claim involved here), the basic principles involved in the analysis – assumption, affirmance or ratification of an agreement precluding actions against the non-debtor contract counter-party – are the same. Applied here, those principles act to preclude the Debtor's continued prosecution

---

[10] *See Eames v. H.B. Claflin Co.*, 220 F. 190, 191 (S.D.N.Y. 1915) (Hand, D.J.) ("if they accepted it, they took it *cum onere*.").

[11] Similarly, the 2nd and 3rd editions of Collier Bankruptcy Manual cite *Greif Bros.* 1 Collier Bankruptcy Manual ¶ 70.28 n. 3 (2nd ed. 1978); 1 Collier Bankruptcy Manual ¶ 365.01 n. 4 (3rd ed. 1979). Relevant excerpts from these editions of the Collier Bankruptcy Manual are provided at Exhibit D hereto.

[12] Relevant excerpts from the 15th edition of Collier on Bankruptcy are provided at Exhibit E hereto.



of a rescission claim to avoid the May 2005 Agreement.[13]

### Conclusion

At argument on August 5, 2009, the Court referenced the case *In re A. Tarricone, Inc.*, 70 B.R. 464 (Bankr. S.D.N.Y. 1987), which was decided by Bankruptcy Judge Schwartzberg. In that decision, Judge Schwartzberg commented that "[i]f the debtor wishes to pursue its cause of action or rescission of the lease it should obviously not assume in this court." *Id.* at 466. Although Judge Schwartzberg offered no citation of legal authority in support of his comments, his comments rested on firm ground.

The analysis which is set forth above demonstrates that the present-day bankruptcy concept of "assumption" of an executory contract has deep roots in the concepts of the "ratification," "adoption" and "affirmance" of contracts. Here, the Debtor has obviously considered whether to continue under the terms of the lease and license agreement and has chosen to do so, rather than reject them. The Debtor litigated assumption of the lease and license agreement with ESB, and persuaded the Court that assumption of the lease and license agreement was appropriate and feasible, and that ESB was not subjected to unreasonable future risk that the Debtor would not be able to perform under the terms of those agreements. The Debtor has manifested an intention to affirm and continue to be bound by the lease and license agreement. Indeed, the Debtor has continued throughout its chapter 11 case to receive the benefits it obtained under the lease and license agreements, and has indicated that it wants to continue receiving those benefits into the future. On the facts of this case, by assuming the lease and license agreement the Debtor has taken action which qualifies as an affirmance or ratification of the lease and license agreement under New York law. Accordingly, the Debtor should either be held estopped from pursuing a claim for rescission, or the Debtor's rescission claims should be dismissed with prejudice.

Respectfully,

William C. Heuer

cc:     Mark Frankel, Esq. (by overnight delivery)
        Charles A. Stewart, III, Esq. (by overnight delivery)

---

[13] *See Eastern Airlines, Inc. v. Ins. Co. of the State of Pa.* (*In re Ionosphere Clubs, Inc.*), 85 F.3d 992, 999-1000 (2d Cir. 1996) (citing *In re Superior Toy & Manuf. Co., Inc., supra,* and discussing principles of estoppel); *Barrier Sys., Inc. v. A.F.C. Enterprises, Inc.*, 264 A.D.2d 432, 433, 694 N.Y.S.2d 440, 442 (2d Dep't 1999) ("Whether under a waiver or ratification analysis, a party may not avoid an agreement on grounds of fraud if, after acquiring knowledge of the fraud, he affirms the contract by accepting a benefit under it.") (internal quotations and citation omitted). *See also* 1 CORBIN ON CONTRACTS ¶ 1.6, *supra* (noting that rescission seeks avoidance of a contract).

# EXHIBIT A

# CORBIN ON CONTRACTS

By

**ARTHUR LINTON CORBIN**

Late Professor of Law Emeritus
Yale University Law School

## Volume 1

### Revised Edition

By

**JOSEPH M. PERILLO**

Alpin J. Cameron Professor of Law
Fordham University School of Law

§§ 1.1–4.14

ST. PAUL, MINN.
WEST PUBLISHING CO.
1993

persons under arrest and are generally discussed in connection with bail bonds.[2] In some jurisdictions the term may have still other uses. In early English history the recognizance seems to have played a much more important part than it does at present in the United States. The taking of recognizances was authorized by certain statutes, one of which was known as the Statute of Merchants. The mayors of certain towns in which various staple commodities were bought and sold were authorized to take such recognizances. A recognizance so taken was often called a Statute Merchant or a Statute Staple. In legal effect it conclusively established the existence of the indebtedness, and it enabled the creditor very easily to obtain legal remedies for the collection of a debt.[3]

**Library References:**

C.J.S. Contracts § 1 et seq.

West's Key No. Digests, Contracts ⚷=1.

## § 1.6   Voidable Contracts

The term "validity" as applied to contracts is of variable signification; there are varying degrees of "validity". An oral

(1899). At common law a recognizance could be enforced by an action of debt or by a writ of scire facias. Green v. Ovington, 16 Johns. 55 (N.Y.1819); Bodine v. Commonwealth, 24 Pa. 69 (1854); McNamara v. People, supra.

**2.** In the Federal system such recognizances are known as "personal appearance bonds." 18 U.S.C.A. § 3142(b).

**3.** Concerning recognizances the Restatement of Contracts (Second) § 6, comment c, states: "A recognizance is an acknowledgment in court by the recognizor that he is bound to make a certain payment unless a specified condition is performed. They are in use chiefly to secure, first, the attendance in court at a future day of the recognizor, or, second, the prosecution of an action, or, third, the payment of bail."

A bail bond is not ordinarily a recognizance. State v. McGuire, 42 Minn. 27, 43 N.W. 687 (1889). People v. Barrett, 202 Ill. 287, 67 N.E. 23 (1903).

A recognizance entered into by an infant has been held to be enforceable. State v. Weatherwax, 12 Kan. 463 (1874).

There is a definition of recognizance in Miller v. Cross, 73 Conn. 538, 640, 48 A. 213, 214 (1901). In the following cases the validity and the enforcement of recognizances were involved:

**Conn.**—Knibbs v. Knibbs Constr. Co., Inc., 25 Conn.Sup. 253, 202 A.2d 248 (1964); Grillo v. Cannistraro, 147 Conn. 1, 155 A.2d 919 (1959); New Haven v. Rogers, 32 Conn. 221 (1864); Mix v. Page, 14 Conn. 329 (1841); Goodwin v. Dodge, 14 Conn. 206 (1841); Darling v. Hubbell, 9 Conn. 350 (1832).

**Ill.**—People v. Clinnin, 12 Ill.App.2d 446, 139 N.E.2d 609 (1957).

**Md.**—Albrecht v. State, 132 Md. 150, 103 A. 443 (1918).

**N.Car.**—Tar Heel Bond Co. v. Krider, 218 N.C. 361, 11 S.E.2d 291 (1940).

**Pa.**—Hamilton v. Harida, 280 Pa.Super. 45, 421 A.2d 396 (1980).

**R.I.**—State v. Vinal, 113 R.I. 426, 325 A.2d 81 (1974).

**Vt.**—In re Zera, 137 Vt. 421, 406 A.2d 396 (1979).

See further Ch.10.

17

contract within the statute of frauds is unenforceable under some circumstances; but it has a high degree of "validity" and is neither void nor voidable. A contract that is induced by fraud is "voidable" by the injured party who has the power of avoidance. The defrauded party also has a power to "ratify", and the contract is enforceable against the wrongdoer. Such a contract, therefore, has a considerable degree of legally operative effect—that is, "validity".

In the case of a voidable contract, there is usually both a power to avoid and a power to validate by ratification. The agreement is, to some extent, legally operative,[1] but there are differences in what its legal operation may be. Where A induces the agreement of B by fraud, as long as it remains wholly executory by both parties it can hardly be said that B is under a legal duty. In an action by A on B's promise, all that B needs to do is to plead and prove the fact of fraud; and if A's own complaint had shown the fraud and absence of ratification, B could have successfully moved to dismiss. It is not necessary to B's defense that B should have done an act of avoidance before the action is brought or before filing an answer.

Thus, in an action by the vendor against the purchaser to recover the purchase price of land, the defendant pleaded that the agreement was induced by fraudulent representations on the part of the plaintiff. The defendant pleaded no act of avoidance prior to the bringing of the suit or prior to the filing of an answer. The contract was wholly executory, there having been no conveyance or payment or delivery of possession. The court held that the answer stated a good defense. The agreement had created no duty in the defendant to pay the price; and the failure to pay was not a breach of contract. The court said: "In the case of an executory contract, a refusal to perform any obligation thereunder and the defense of an action brought thereon are all that the defrauded party can do by way of asserting his right to disaffirm the contract; and, unless his silence or delay has operated to the prejudice of the other party, he may first assert his right when his adversary first asserts his claim by action."[2] If a conveyance had

§ 1.6

[1] "It was resolved that in all cases when the deed is voidable, and so remains at the time of the pleading (as if an infant seals and delivers a deed, or a man of full age by duress) in these and the like cases, the obligor cannot plead *non est factum*, for it is his deed at the

time of the action brought." Whelpdale's Case (1605) 5 Coke, 119a.

The distinction between "voidable" and void is well drawn in National Union Fire Ins. Co. v. Carib Aviation, Inc., 759 F.2d 873 (11th Cir.1985).

[2] N.J.—Roberts v. James, 83 N.J.L. 492, 85 A. 244 (1912).

already been made or if the purchaser had been put in possession of the land, in order to avoid the contract it would have been necessary for him to offer a reconveyance or offer to surrender possession.

The same distinction exists in the case of contracts that are said to be voidable on the ground of infancy. As long as such an agreement is wholly executory on both sides, the infant is under no enforceable duty whatever. When sued for an alleged breach, all the infant needs to do is to plead infancy as a defense.[3] It is not necessary that the infant should have done any act of avoidance prior to raising the defense. Here, too, according to the commonly existing law of infancy, if the infant had received a part performance and still retains it at the time of suit, it would be necessary to give it up; its continued retention after becoming of age soon operates as a ratification.

In none of these cases is the agreement wholly void of legal operation. It may or it may not create a legal duty in the party having the power of avoidance; but it certainly is fully operative as against the other party to the agreement, except in those cases where the other party, too, may have a power of avoidance.[4] In all such cases, whatever legal relations the agreement in fact creates are voidable by one of the parties; and the agreement may be made fully operative as against both of the parties, by the exercise of a power of ratification. There is a power to ratify, as well as a power to avoid; and most such contracts are commonly said to be voidable can be described with equal accuracy as ratifiable.[5]

**Eng.**—Aaron's Reefs v. Twiss, [1896] A.C. 273.

3. Vt.—Lesnick v. Pratt, 116 Vt. 477, 78 A.2d 487, 80 A.2d 663 (1951).

4. Both parties might be infants. See Hurwitz v. Barr, 193 A.2d 360 (D.C.App.1963) (sale of motor scooter). Absent such an independent ground for avoidance, only the protected party may disaffirm. Taylor Distributing Co., Inc. v. Haines, 31 Wash.App. 360, 641 P.2d 1204 (1982).

5. The Restatement of Contracts (Second) § 7 provides as follows: "A voidable contract is one where one or more parties thereto have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract; or by ratification of the contract to extinguish the power of avoidance."

In Cassella v. Tiberio, 150 Ohio St. 27, 80 N.E.2d 426, 5 A.L.R.2d 1 (1948), the court held that an infant's guaranty of the debt of another was not validated by his failure to express his disaffirmance within a reasonable time after becoming of age. He had received no benefits, the continued retention of which might operate as a ratification. The court said: "To say that the executory contract of an infant is voidable means that it is capable of being confirmed or avoided, although, until there is a definite ratification or confirmation by the infant after he becomes of age, it may not be enforced against him." There is similar language in Minock v. Shortridge, 21 Mich. 304 (1870), and Edgerly v. Shaw, 25 N.H. 514, 57 Am. Dec. 349 (1852).

"Voidable contract" is not a simple and uniform concept; detailed analysis of voidable contracts will show important differences.[6] In every case, however, it will be found that one of the parties has a legal power, either of avoidance or of ratification, or of both. If the party having a power of avoidance—the infant, the lunatic, the defrauded party, the party affected by mistake—exercises it, such rights and duties as the transaction has created are terminated including those of the other party. The exercise of the power to ratify will in some cases create a duty that did not before exist and will always terminate the power of avoidance. No new consideration is required for this.[7]

Such a power of avoidance as is above described is sometimes created by the express agreement of the parties; there may be an "option" to terminate an otherwise perfectly valid contract by giving notice or by doing some other act.[8] But the term "voidable contract" is customarily used only where the power to avoid or to validate is created by the law on grounds of policy and independently of agreement.

**Library References:**

C.J.S. Contracts §§ 1 et seq, 100 et seq.
West's Key No. Digests, Contracts ⊂=1, 10.

## § 1.7    Void Contracts

The meaning that is most commonly intended to be conveyed by the word "void" is total absence of legal effect. It may sometimes be confused with the word "voidable"; but the error involved is nearly certain to be an error as to the legal operation of facts and not one of mere terminology. One who says that an agreement or a promise is "void" usually supposes that it has no legal operation whatever, being in many cases quite unaware that a number of important legal relations have been created.

In the term "void contract," there is a self-contradiction.[1] This is because the term "contract" is always defined so as to include some element of enforceability. There is no such weak-

---

6. This treatise deals with mistake in Chs. 27–29. It does not deal with avoidance on the grounds of duress, undue influence or misrepresentation, for which see John D. Calamari & Joseph M. Perillo, The Law of Contracts Ch. 9 (3d ed. 1987).

7. Restatement (Second) of Contracts § 85 (1981). See further §§ 227–228 of this treatise.

8. See Gurfein v. Werbelovsky, 97 Conn. 703, 118 A. 32 (1922), noted 32 Yale L.J. 496 (1923).

**§ 1.7**

1. Accord, Restatement (Second) of Contracts § 7, comment 1 (1981). On the varying uses of the term "void", see Abraham J. Levin, The Varying Meaning and Legal Effect of the Word "Void," 32 Mich.L.Rev. 1088 (1933).

# EXHIBIT B

2

# RESTATEMENT OF THE LAW

## SECOND

# CONTRACTS 2d

Volume 3

§§ 316–End

TABLES and INDEX

*As Adopted and Promulgated*

BY

THE AMERICAN LAW INSTITUTE

AT WASHINGTON, D.C.

May 17, 1979

ST. PAUL, MINN.

AMERICAN LAW INSTITUTE PUBLISHERS

1981

consideration, B gives A his promissory note for the premium, payable in three months. B fails to pay the note at maturity. Four months later, before A has given notice of cancellation, B's house burns. A cannot treat B's failure to pay as discharging it from its duty to pay for the loss under the policy. A is liable for the loss less the amount of the note.

2. A makes a contract with B under which A guarantees that C will pay a $100,000 debt owed B by C and due on July 1. In consideration, B promises to pay A a $1,000 on May 1. B fails to pay on that date. Before A manifests to B his intention to treat B's failure as discharging him from his duty to honor his guarantee of C's debt, C becomes insolvent. A cannot treat B's failure as discharging him from that duty and is liable on his $100,000 guarantee less the $1,000.

3. A and B make a contract under which A guarantees a $50,000 debt owed to B by C and due on July 1 in consideration of a guarantee by B of a $100,000 debt owed to A by D and due on August 1. C fails to pay on July 1 and A fails to honor his guarantee. Before B manifests his intention to treat A's failure as discharging B from his duty to honor his guarantee of D's debt, D becomes insolvent. B cannot treat A's failure as discharging him from that duty and is liable on his $100,000 guarantee less the $50,000 that A owes on his guarantee.

## REPORTER'S NOTE

This Section is based on former §§ 291, 292. See also former §§ 291, 292. See 3A Corbin, Contracts § 730 (1960); 5 Williston, Contracts §§ 683–88 (3d ed. 1961).

Comment b. Illustration 1 is based on Illustration 4 to former § 298. Illustrations 2 and 3 are based on Illustrations 1 and 3 to former § 292.

## § 380. Loss of Power of Avoidance by Affirmance

(1) The power of a party to avoid a contract for incapacity, duress, undue influence or abuse of a fiduciary relation is lost if, after the circumstances that made the contract voidable have ceased to exist, he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance.

(2) The power of a party to avoid a contract for mistake or misrepresentation is lost if after he knows or

has reason to know of the mistake or of the misrepresentation if it is non-fraudulent or knows of the misrepresentation if it is fraudulent, he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance.

(3) If the other party rejects an offer by the party seeking avoidance to return what he has received, the party seeking avoidance if entitled to restitution can, after the lapse of a reasonable time, enforce a lien on what he has received by selling it and crediting the proceeds toward his claim in restitution.

**Comment:**

*a. Ratification by affirmance.* A party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract. Such action is known as "affirmance" and has the effect of ratifying the contract. See Restatement of Restitution § 68. The rule stated in this Section is a special application of that stated in § 85, under which a promise to perform a voidable duty is binding. On ratification, the affirming party is bound as from the outset and the other party continues to be bound.

*b. Manner and time of affirmance.* A party may manifest his intention to affirm by words or other conduct, including the exercise of dominion over what he has received in a manner inconsistent with avoidance of the contract. Compare Uniform Commercial Code § 2–606. If he offers to return the performance that he has received and if such an offer is rejected, he must hold that performance for the other party. Because the party seeking restitution has a lien on any performance that he has himself received, however, he is entitled to enforce that lien under the rule stated in Subsection (3) after he has waited a reasonable time. A party's power of avoidance for incapacity, duress, undue influence or abuse of a fiduciary relation is not lost by conduct while the circumstances that made the contract voidable continue to exist. Nor is his power of avoidance for misrepresentation or mistake lost until he knows of the misrepresentation if it is fraudulent, or knows or ought to know of a non-fraudulent misrepresentation or mistake.

**Illustrations:**

1. A is induced by B's misrepresentation to make a contract to repair B's house, payment to be made when the services have

been rendered. When A discovers the facts, he accuses B of fraud and threatens to avoid the transaction unless B pays in advance or furnishes security. Before A receives any response from B, A notifies B that he avoids the contract. A's conduct did not amount to affirmance and the contract is avoided. The result would be different, however, if A demanded that B perform the contract or accepted security from B.

2. A is induced by B's misrepresentation to make a contract to employ B for a year. When A discovers the facts, he continues to employ B for two weeks and then discharges him in violation of the contract, notifying B that he avoids the contract. A's conduct amounted to affirmance and he is liable to B for breach of contract. The result would not be affected if A did not learn until the end of the two weeks that the law gave him the power to avoid the contract. The result would be different, however, if B had persuaded A to continue the employment for another two weeks as a trial period and A discharged B at the end of that time because A was still dissatisfied.

3. A is induced by B's fraudulent and material misrepresentation to buy land from B. When A discovers the fraud he brings an action in deceit against B. A later discontinues the action and notifies B that he avoids the contract. Since A's bringing of the action was a manifestation of his intention to affirm the contract only if damages are paid, it did not without more amount to affirmance. A's subsequent attempt to avoid the contract was effective.

4. A contracts to sell and B to buy a tract of land, the value of which has depended mainly on the timber on it. Both A and B believe that the timber is still there, but in fact it has been destroyed by fire so that the contract is voidable by B on the ground of mistake. See Illustration 1 to § 152. On discovery of the mistake, B tenders a deed back to A, who refuses to accept it. B continues to occupy and to use the land. B's conduct amounts to affirmance and he is precluded from avoiding the contract.

## REPORTER'S NOTE

This Section is based on former §§ 482, 484, 510. See 5 Corbin, Contracts § 1104 (1964 & Supp. 1980); 2 Williston, Contracts §§ 239, 258 (3d ed. 1959); 12 id. § 1527 (3d ed. 1970); 13 id. § 1527B (3d ed. 1970); Dobbs,

Remedies § 1.5 (1973); Dobbs, Pressing Problems for the Plaintiff's Lawyer in Rescission: Election of Remedies and Restoration of Consideration, 26 Ark. L. Rev. 322 (1972).

*Comment b.* Illustration 1 is based on Illustrations 2 and 8 to former § 484. Illustration 2 is based on Illustrations 3, 4 and 7 to § 484. Illustration 3 changes the result in Illustration 6 to former § 484, and is supported by Schenck v. State Line Tel. Co., 238 N.Y. 308, 144 N.E. 592 (1924). It rejects the view of such cases as Albin v. Isotron Corp., 421 S.W.2d 739 (Tex. Civ. App. 1967), ref. n.r.e.; see also Jennings v. Lee, 105 Ariz. 167, 461 P.2d 161 (1969). Illustration 4 is based on Illustration 1 to former § 482.

## § 381. Loss of Power of Avoidance by Delay

(1) The power of a party to avoid a contract for incapacity, duress, undue influence or abuse of a fiduciary relation is lost if, after the circumstances that made it voidable have ceased to exist, he does not within a reasonable time manifest to the other party his intention to avoid it.

(2) The power of a party to avoid a contract for misrepresentation or mistake is lost if after he knows of a fraudulent misrepresentation or knows or has reason to know of a non-fraudulent misrepresentation or mistake he does not within a reasonable time manifest to the other party his intention to avoid it. The power of a party to avoid a contract for non-fraudulent misrepresentation or mistake is also lost if the contract has been so far performed or the circumstances have otherwise so changed that avoidance would be inequitable and if damages will be adequate compensation.

(3) In determining what is a reasonable time, the following circumstances are significant:

(a) the extent to which the delay enabled or might have enabled the party with the power of avoidance to speculate at the other party's risk;

(b) the extent to which the delay resulted or might have resulted in justifiable reliance by the other party or by third persons;

(c) the extent to which the ground for avoidance was the result of any fault by either party; and

(d) the extent to which the other party's conduct contributed to the delay.

# EXHIBIT C

COLLIER ON BANKRUPTCY

14TH EDITION

4A

# COLLIER
## ON
# BANKRUPTCY

---

## FOURTEENTH EDITION

### JAMES WM. MOORE

---

EDITOR-IN-CHIEF

### LAWRENCE P. KING

EDITOR-IN-CHIEF—REVISIONS

## VOLUME 4A

*original text by*

James Wm. Moore
*Professor of Law, Yale University*

Robert Stephen Oglebay
*Member of the Indianapolis Bar*

Frank R. Kennedy
*Professor of Law, University of Michigan*

Lawrence P. King
*Professor of Law, New York University*

*REVISION EDITORS*

### FRANK R. KENNEDY

*Professor of Law, University of Michigan*

### LAWRENCE P. KING

*Professor of Law, New York University*

1978

(Date Originally Published: 1898)



MATTHEW
BENDER

235 E. 45TH STREET, NEW YORK, N.Y. 10017

gagee,[24] whereas the estate was not, through abandonment, relieved of its share of expenses incurred prior to disclaimer.[25] It would probably be more consistent either by neither allowing the estate to participate in revenue produced by abandoned property prior to abandonment nor burdening the estate with any incident expenses, or on the other hand to assign to the estate both the revenue and the expenses which accrue pending abandonment. The former view is the more consonant with the principle that abandonment relates back to the filing date.

As long as property is concealed it cannot be abandoned.[25] If the estate is closed, title to such property, then in the trustee by virtue of § 70a, does not revert to the bankrupt in the sense that he may reassert full legal and equitable dominion, as he may in the case of abandoned property.[27] On the other hand, title can scarcely be said to remain in the discharged trustee, or in a state of abeyance.[28] The most adequate theory is to treat the bankrupt as holding only the bare legal title in constructive trust for the creditors entitled to the beneficial interest and for the trustee to be appointed upon a reopening of the estate.[29]

## ¶ 70.43. Executory Contracts Other Than Leases. § 70b.

### [1]—Prior to Act of 1938.

The principle that the trustee in bankruptcy may renounce title to, and abandon, burdensome property had been extended to execu-

---

24 Matter of Mitchell (D.C., Ga.), 13 Am.B.R.(N.S.) 189, 49 F.(2d) 652.

25 Robinson v. Dickey (C.C.A., 3d Cir.), 15 Am.B.R.(N.S.) 287, 36 F.(2d) 147, cert. den. 281 U.S. 750, 50 S.Ct. 354, 74 L.Ed. 1161. But cf. Equitable Loan & Sec. Co. v. Moss & Co., (C.C.A., 5th Cir.), 11 Am.B.R. 111, 125 F.(2d) 609, where the bankruptcy court was directed to release encumbered property on condition that the lienholder reimburse the trustee for his outlay on expenses in connection with maintaining the property less rentals received.

26 See n. 8, supra.

27 First Nat. Bank v. Lasater, 196 U.S. 115, 13 Am.B.R. 698, 25 S.Ct.

206, 49 L.Ed. 408; Standolind Oil & Gas Co. v. Logan (C.C.A., 5th Cir.), 34 Am.B.R.(N.S.) 685, 92 F.(2d) 28, cert. den. 302 U.S. 763, 58 S.Ct. 409, 82 L.Ed. 592, and 303 U.S. 636, 58 S.Ct. 522, 82 L.Ed. 1097; Schlesinger v. Miller (S.D.Iowa 1939) 46 Am.B.R. (N.S.) 463, 32 F.Supp. 631, app. dism'd (C.C.A. 8th, 1940) 111 F.(2d) 897, 898; Estep v. Estep (Tex.Civ.App. 1951) 237 S.W.(2d) 647.

28 See Stipe v. Jefferson, 192 Minn. 504, 28 Am.B.R.(N.S.) 589, 257 N.W. 99 (where, however, no fraud was involved.)

29 Philbrick v. Burbank (N.H. 1958) 141 A.(2d) 888, quoting Treatise. See the discussion in ¶ 70.07[2], supra.

tory contracts many decades prior to the Act of 1938.[1] It was generally agreed that the bankrupt's executory contracts gave rise to a power in the trustee either to assume or renounce the contracts, as he deemed best for the interests of the estate.[2] This option involved

(Continued on page 519)

---

[1] See Sunflower Oil Co. v. Wilson, 142 U.S. 313, 12 S.Ct. 235, 35 L.Ed. 1025; Sparhawk v. Yerkes, 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915, dealing with obligations incident to membership in a stock exchange.

[2] Central Trust Company of Illinois v. Chicago Auditorium Association, 240 U.S. 581, 36 Am.B.R. 679, 36 S.Ct. 412, 60 L.Ed. 811, L.R.A. 1917B, 580, noted in (1916) 16 Col.L.Rev. 515, (1916) 14 Mich.L.Rev. 593; Watson v.

(Continued on page 519)

not only a privilege but also a duty to ascertain within a reasonable period of time whether or not there was a possible profit in the contract for the estate.[3] The duty and privilege were said to be the trustee's, but there was language to the effect that the trustee's act consisted in a mere suggestion or application to the bankruptcy court, which by its order authorized the trustee either to reject or to assume the contract, as the court deemed best in the interest of the estate.[4] If the trustee, thus authorized by the court, elected to assume a contract, he was required to take it *cum onere*—that is, subject to all its provisions and conditions.[5]

[3] Merrill, *supra*, n. 6; Matter of Lathrap (C.C.A., 9th Cir.), 22 Am.B.R.(N.S.) 136, 61 F.(2d) 37; Barr v. Youngsville Sugar Factory, Ltd, 141 La. 869, 40 Am.B.R. 30, 75 So. 805, L.R.A. 1917 F. 654.

[4] In re Grainger (C.C.A., 9th Cir.), 20 Am.B.R. 166, 190 Fed. 69; Matter of Schilling and Loller (D.C., Ohio), 41 Am.B.R. 705, 251 Fed. 966. See particularly Greif Bros. Cooperage Co. v. Mullinix (C.C.A., 8th Cir.), 45 Am. B.R. 265, 264 Fed. 391: "The referee in bankruptcy and the trustee, with his consent, were vested with the power and charged with the duty to accept, adopt and perform that contract or to renounce it . . . ." In this case it was petitioned for its assumption.

[5] Atchison, Topeka & Santa Fe Ry. Co. v. Hurley (C.C.A., 8th Cir.), 13 Am.B.R. 396, 153 Fed. 503, aff'd 213 U.S. 126, 22 Am.B.R. 17, 29 S.Ct. 466, 53 L.Ed. 729; Gerber & Co., Inc. v. First Nat. Bank, 110 Conn. 383, 15

Am.B.R.(N.S.) 396, 148 Atl. 669; *cf.* Matter of Capital Service, Inc. (S.D. Cal. 1955) 136 F.Supp. 430, 437; In re Schenectady Ry. (N.D.N.Y. 1950) 93 F.Supp. 67. In Greif Bros. Cooperage Co. v. Mullinix, *supra*, n. 4, the court said: "When the trustee in bankruptcy by order of the referee or of the court elects to ratify, confirm and adopt the executory contract of the bankrupt, he thereby assumes the liabilities of the bankrupt thereunder and takes the contract in the same plight in which the bankrupt held it." See also the cases cited in the Greif Bros. case and the following to the same effect: In re De Long Furniture (D.C., Pa.), 26 Am.B.R. 469, 188 Fed. 686; Matter of Dermer (D.C., Cal.), 13 Am.B.R.(N.S.) 726, 56 F.(2d) 223 (right of vendor of land to terminate sales contract upon default and to claim rent paid by subtenants).

When the contract was terminated prior to bankruptcy by due notice given by the vendor to the purchaser, a state court determination to that effect in an action pending but not stayed when bankruptcy intervened was held entitled to recognition in the bankruptcy proceeding, and accordingly the trustee acquired no title under the contract and no right to assume or reject. Matter of Winter (D.C., Mich.), 9 Am.B.R.(N.S.) 394, 17 F.(2d) 153. When the termination was voluntarily agreed upon between the vendor and the subsequently bankrupt vendee under circumstances rendering the agreement preferential,

          (Rel. No. 2)

Copyright © 1967, By Matthew Bender & Co., Inc.

But there was one feature of the law as applied to executory contracts that distinguished them from all other property that might or might not be burdensome. If was said that contrary to the usual rule, the title to the bankrupt's executory contracts or leases (which were included in that category) did not vest in the trustee as of the time prescribed in § 70a, but rather vested only upon the affirmative act of adoption, though with retroactive effect so that such adoption related back to the time specified in § 70a.[5] The rationalization for this was that executory contracts and leases involved future liabilities as well as rights, and the estate should not be charged with these except when they were clearly assumed upon due deliberation.[7] If was also felt that should title be regarded as passing automatically, difficulties of reconveyance to the bankrupt might ensue,[8] although this point was probably overdrawn and indeed was disputed.[9] It is interesting to note, however, that with regard to leases, despite any basic inconsistency, the courts had no trouble in finding that title passed by operation of law as distinguished from acts of the bankrupt when confronted with a clause in a lease forbidding assignment and terminating the lease upon any attempted assignment.[10]

however, the trustee was allowed to avoid the termination and to be reinstated to the vendee's rights. Wilson v. Holub, 202 Iowa 549, 8 Am.B.R. (N.S.) 892, 210 N.W. 593.

[5] Matter of Frazin & Oppenheim (C.C.A., 2d Cir.), 24 Am.B.R. 903, 183 Fed. 28, 33 L.R.A.(N.S.) 745 (lease); Watson v. Merrill (C.C.A., 8th Cir.), 14 Am.B.R. 453, 136 Fed. 359, 69 L.R.A. 719, followed by Matter of Berry (D.C., Mich.), 41 Am.B.R. 357, 247 Fed. 700. To the same effect, see In re Scruggs (D.C., Ala.), 31 Am. B.R. 94, 205 Fed. 673; Kirstein Holding Co. v. Bangor Veritas, Inc, 131 Me. 421, 27 Am.B.R.(N.S.) 222, 163 Atl. 655 (lease); Matter of McCrory Stores Corp. (C.C.A., 2d Cir.), 25 Am. B.R.(N.S.) 135, 69 F.(2d) 517 (lease); Matter of Sherwood's, Inc. (C.C.A., 2d Cir.), 31 Am.B.R. 769, 210 Fed. 754, Ann.Cas. 1916A, 940 (lease).

[7] Watson v. Merrill, supra, n. 6; Matter of Frazin & Oppenheim, supra, n. 6.

[8] Matter of Frazin & Oppenheim, supra, n. 6.

[9] See dissenting opinion of Circuit Judge Ward in Matter of Frazin & Oppenheim, supra, n. 6.

[10] See cases cited in ¶ 70.44, infra, n. 12. A more recent case has noted the difficulties of rationalization. In Palmer v. Palmer (C.C.A. 2d, 1939) 40 Am.B.R.(N.S.) 286, 104 F.(2d) 161, cert. den. (1939) 308 U.S. 590, 591, 60 S.Ct. 120, 121, 84 L.Ed. 494 (lease), the court observed in another connection that had the whole question been a new one a different answer might be given. The court said further "Nevertheless, . . . the trustee's adoption of the term is said to 'relate back' to the beginning of the proceeding . . . The reason for this is not clear. It does not follow from § 70 of the Bankruptcy Act, 11 U.S.C.A., § 110, which vests the trustee's title only 'by operation of law'; for title to the term vests not by operation of law at all, but only by the trustee's adoption.''

¶ 70.43

**[8]—Covenant Against Assignment as Affecting Trustee's Power.**

Section 70b provides:

"A general covenant or condition in a lease that it shall not be assigned shall not be construed to prevent the trustee from assuming the same at his election and subsequently assigning the same; but an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same is enforceable."

While this provision relates expressly only to leases, where the problem usually occurs, there seems to be no good reason why the same principles would not be applied with regard to executory contracts generally in a similar situation, particularly since the provision here quoted represents merely an adoption of prior case law.[32]

**[9]—Effects of Assumption or Rejection.**

The trustee's assumption of an executory contract operates as a complete transfer of all the bankrupt's contractual rights and contractual liabilities therein.[33] The transfer is not cumulative in effect —that is, the trustee is not added to the bankrupt as another debtor, jointly or severally liable with the bankrupt, his discharge from his contractual relation, and his replacement by the trustee.[34]

---

[32] See ¶ 70.44[3], infra.

[33] Greif Bros. Cooperage Co. v. Mellinix (C.C.A., 8th Cir.), 45 Am.B.R. 265, 264 Fed. 391; Texas & N.O.R. Co. v. Phillips (C.A. 5th, 1952) 196 F. (2d) 692; In re Tidy House Products Co. (S.D.Iowa 1948) 79 F.Supp. 674; In re M & S Amusement Enterprises, Inc. (D.Del. 1954) 122 F.Supp. 364, quoting Treatise; Matter of Saxe Glassman Shoe Corp. (Ref., D.Me. 1954) 29 J.of Nat'l Ass'n of Ref. 48. For additional references to pre-1938 authorities, see n. 5, supra.

In In re Italian Cook Oil Corp. (C.A. 3d, 1951) 190 F.(2d) 994, citing the Treatise, the court held that where Chapter X trustees elected to perform an army contract, they also assumed as incident obligation of an equitable assignment of the moneys coming due under the contract. Although the assignment was made pursuant to a loan transaction intended to enable the debtorassignor to perform the contract, the court held that the diversion of the money actually lent to other purposes afforded the trustee no defense against the enforceability of the assignment.

[34] Rosenblum v. Uber (C.C.A., 3d Cir.), 43 Am.B.R. 480, 256 Fed. 584; In re Scruggs (D.C., Ala.), 31 Am. B.R. 94, 205 Fed. 673. See also language in Greif Bros Cooperage Co. v. Mullinix (C.C.A., 8th Cir.), 45 Am. B.R. 265, 264 Fed. 391: " . . the court below required the Greif Company to continue and complete the performance of the contract and subjected the trustee and the estate to the liability on their part to perform the *bankrupt's* part of the contract according to its terms." For an instance of a con-

(Rel.No.28—1975) (Collier)

Another important effect of assumption is to purge any anticipatory breach of contract based on the fact of bankruptcy itself. As we have seen previously, the other party to the contract may assert that bankruptcy puts the bankrupt in a position of inability to perform and thus gives rise to a claim for damages for anticipatory breach.[35] However, unless the contract clearly provides that bankruptcy terminates the contract or gives the other party the option to terminate, the trustee cannot be prevented from exercising the privilege vested in him by § 70b or Rule 607 of choosing whether to assume or reject the contract.[36] If the trustee, within the prescribed time limit, chooses to assume the contract, the anticipatory breach is eliminated and the trustee may sue the other party for performance or damages.[37] Assumption is irrevocable in the sense that once a contract is validly assumed by the trustee the latter is estopped from denying his liability under the contract.[38] Naturally, there is no irre-

tractual obligation surviving assumption see, however, Matter of Tidus (D.C., Del.), 6 Am.B.R.(N.S.) 66, 4 F.(2d) 558 (express provision therefor in contract itself).

[35] See In re Tidy House Products Co. (S.D.Iowa 1948) 79 F.Supp. 674; Matter of Robertson (W.D.Ark. 1941) 48 Am.B.R.(N.S.) 750, 41 F.Supp. 665, quoting Treatise; ¶ 63.31, *supra*.

[36] Columbia Products Corp. v. Coronation Diamonds, Inc. (App.Div., 2d Dept 1950) 95 N.Y.S.(2d) 898; Planters' Oil Co. v. Gresham (Tex.Civ. App.), 42 Am.B.R. 29, 202 S.W. 145, recognizing trustee's right of election to assume under law prior to 1938; cf. Matter of Robertson (W.D.Ark. 1941) 48 Am.B.R.(N.S.) 750, 41 F.Supp. 665. In re Pagliaro (N.D.Cal. 1951) 90 F.Supp. 548, aff'd *per curiam sub nom.* Costello v. Golden (C.A. 9th, 1952) 196 F.(2d) 1017, the court citing the Treatise, emphasized that neither bankruptcy of the vendee nor unauthorized repossession by the conditional vendor after the vendee's bankruptcy interfered with the trustee's right to affirm or reject under § 70b [Rule 607].

[37] Planters' Oil Co. v. Gresham (Tex.

Civ.App.), 42 Am.B.R. 29, 202 S.W. 145; 3 Williston, Contracts (Rev. ed. 1936) § 880.

Right of landlord to terminate lease before assumption by tenant's trustee. —For a discussion of the problems generated by efforts on the part of landlords to terminate leases before they can be assumed in bankruptcy proceedings, see ¶ 70.44[3.1], *infra*.

[38] Greif Bros. Cooperage Co. v. Mulhnix, *supra*, n. 36.

Effect of assumption in debtor-relief and reorganization proceedings.—Section 77(b) is explicit that adoption of an executory contract by a trustee of a railroad in reorganization shall not preclude its rejection in the plan. See Vol. 5, ¶¶ 7.13, 77.25 The effect of assumption is not dealt with in the debtor-relief chapters, but the tendency seems to be to treat assumption by the trustee or debtor in possession as binding, at least in the absence of unusual circumstances. See Vol. 6, ¶ 3.24[3]; Vol. 9, ¶ 8.07 (Chapter XI proceedings); Vol. 9, ¶ 8.05 (Chapter XII proceedings). A refusal to reject, however, is not necessarily tantamount to assumption. Vol. 6, ¶ 3.23[7]; Vol. 8, ¶ 3.15.

vocability in the sense that the assumption can not subsequently be annulled by mutual agreement.

The same principles apply in the event of rejection. Hence if the trustee rejects or is deemed to have rejected a contract, the other party is entitled to rely upon the rejection and to act accordingly.[39] But he is not prevented from reviving the contract as an arrangement with the trustee if the latter changes his mind.[40] The effect of rejec-

¶ 70.43

[39] Fletcher v. Surprise (C.A. 7th, 1950) 180 F.(2d) 669, quoting Treatise, cert. den. (1950) 340 U.S. 824, 71 S.Ct. 58, 95 L.Ed. 605; Gulf Petroleum, S.A. v. Collazo (C.A. 1st, 1963) 316 F.(2d) 257, citing Treatise; Rosnick v. Aetna Sheet Metal Works, Inc. (1959) 146 Conn. 565, 153 A.(2d) 485, citing Treatise. Stauchbar v. Limbach, Co., 308 F. Supp 696 (E.D.Wis. 1970).

Rejection of conditional sale contract.—When the trustee elected to reject a conditional sale contract by inaction, for 60 days, it was held that the conditional vendor was warranted in repossessing the property and retaining not only payments made by the bankrupt but the proceeds from resale. In re Pagliaro (N.D.Cal. 1951) 99 F.Supp. 548, aff'd per curiam sub nom. Costello v. Golden (C.A. 9th, 1952) 196 F.(2d) 1017. Neither the fact that the conditional seller repossessed before the end of the 60-day period and without permission of the bankruptcy court nor that the resale enabled the conditional seller to realize a surplus over the original price and a brokerage commission was deemed to affect his standing in the turnover proceeding instituted by the trustee. The referee had ordered turnover of the surplus, but on appeal the district court seemed to think that the trustee's right to the surplus depended on his power to affirm, which had been lost by virtue of the expiration of the 60-day period. The right of a defaulting vendee to require a repossessing conditional vendor to account for a balance produced by resale is a matter of state

law, of course, but the Pagliaro opinion makes no inquiry into the California law on this matter. See ¶ 70.19[9], supra, n. 31, for authorities sustaining the trustee's claim to the defaulting vendee's interest in conditionally sold property notwithstanding failure to assume or affirm the contract.

Conditional vendors sought unsuccessfully to enforce contractual provisions for rental for the period after bankruptcy required to determine the validity of the vendors' reservation of title in In re Dakerson Pub. Co. (C.C.A., 3d Cir.), 26 Am.B.R. 582, 188 Fed. 64. The court left open the question of liability of the trustee of the vendee for use and occupation of the property during the administration of the estate, but the trustee's nonassumption of the contracts was fatal to the claims for rent based thereon.

[40] In Ten-Six Olive, Inc. v. Curby (C.A. 8th, 1955) 208 F.(2d) 117, a sublessee petitioned for reorganization under Chapter X, and its trustee continued to occupy the premises and pay the stipulated rent for over fifteen months. Bankruptcy then eventuated, and the premises were vacated six weeks later on the date to which rent had been paid. No action was taken by any party to have the court order assumption or rejection of the lease. The lessor had obtained keys and sought to obtain a new tenant for the premises, apparently at an advance in the rental, before final vacation of the premises. The court held that the lessor's conduct amounted to a waiver of its right to

tion, actual or constructive, is that such rejection constitutes a breach of contract giving the other party the right to claim damages.[41] This claim must be proved within the period provided in Rule 302.[42] The trustee may, however, go further. He may attempt to rescind the contract altogether, and by surrendering to the other party, with the latter's consent, the property received by the bankrupt he may succeed in nullifying the contract and thereby deprive the other party even of any provable claim to a distributive share.[43]

---

[41] Seedman v. Friedman (C.C.A. 2d, 1942) 51 Am.B.R.(N.S.) 63, 132 F.(2d) 290, citing and quoting Treatise; Continental Motors Corp. v. Morris (C.C.A. 10th, 1943) 169 F.(2d) 315; In re New York Investors Mutual Group, Inc. (S.D. N.Y. 1956) 143 F.Supp. 51, citing Treatise; cf. Matter of San Francisco Bay Exposition (N.D.Cal. 1943) 54 Am.B.R. (N.S.) in n. 16, supra. See United States v. Chichester (C.A. 9th, 1968) 312 F.(2d) 275. See generally ¶¶ 63.31, 63.35, supra.

The fact that the party contracting with the bankrupt may have had a right to specific performance under nonbankruptcy law has been held not to militate against the right of the trustee to reject or assume the contract so as to achieve the overriding purpose of the bankruptcy law to secure an equitable distribution of the assets of the bankrupt. In re New York Investors Mutual Group, Inc., supra.

[42] Matter of Robertson (W.D.Ark. 1941) 48 Am.B.R.(N.S.) 750, 41 F. Supp. 665, quoting Treatise; Continental Motors Corp. v. Morris (C.C.A. 10th, 1943) 169 F.(2d) 315, permitting amendment to claim which substantially increased its amount notwithstanding

lapse of time originally allowed for filing claims. But cf. Matter of San Francisco Bay Exposition (N.D.Cal. 1943) 54 Am.B.R.(N.S.) 173, 50 F. Supp. 344, holding that the claim of a Chapter XI debtor against a building and loan commissioner who disaffirmed pursuant to a state statutory authority was not affected by his bar order in view of his participation in the litigation in the bankruptcy court. See generally with reference to § 57n [Rule 302], ¶¶ 57.26–57.35, supra.

Perfection of mechanic's lien after rejection of contract.—When a trustee rejected an executory contract under § 70b, it was held that this had the effect of shortening the time within which the contractor could perfect his mechanic's lien, presumably to secure the obligation for the consideration rendered before the rejection. Matter of Parris Construction Co. (W.D.Pa. 1941) 47 Am.B.R.(N.S.) 435. State law ordinarily allowed six months after the completion of the work for the filing of the lien, but the rejection was said to start the six-month period. Although the court did not make the point clear, the time allowed for perfecting a statutory lien valid under § 67b, c against the trustee is exclusively a matter for non-bankruptcy lien law to determine. See ¶ 67.28, supra.

[43] Kenyon v. Mulert (C.C.A., 3d Cir.), 26 Am.B.R. 184, 184 Fed. 825. Cf. In re New York Investors Mutual Group, Inc. (S.D.N.Y. 1956) 143 F. Supp. 51.

consider the lease rejected and denied its claim for damages for anticipatory breach of the lease under § 63a(9). The case is subjected to critical comment in (1954), 38 Minn.L.Rev. 868, (1956) 30 J.of Nat'l Ass'n of Ref. 58.

¶ 70.44

The trustee's power to renounce or reject a contract which on the filing date was not completely performed by any party is not generally affected or prejudiced by acts of performance undertaken by the bankrupt after the filing date and before the appointment and qualification of the trustee.[44] If it should, however, be remembered that the Act of 1938, through the provisions of § 70d, now makes it possible for third persons acting in "good faith" validly to transact business with an alleged bankrupt in the interval between the filing of the petition and the order of adjudication or the taking of possession by a bankruptcy receiver, whichever first occurs.[45] Therefore, if some act or transfer by the bankrupt, valid under § 70d, constitutes the completion of contractual performance, it could be asserted that § 70d controls and that the trustee may not subsequently reject the contract on the ground that at the filing date the contract still was unperformed and hence subject to rejection. This is all right as far as involuntary bankruptcy proceedings are concerned. But, where a voluntary petition is filed, adjudication is automatic and there is no time period between filing and adjudication.[46] Consequently, no transfers after that date would be valid against the trustee but reference should be made to the decision of the Supreme Court in *Bank of Marin v. England*[47] which would at least permit a contrary argument.

¶ 70.44. Leases, § 70b.

[1]—Statutory Provisions Referring to Leases Only.

Leases, if unexpired at the date of the filing of the petition, are "executory" contracts and therefore subject to the provisions of §70b and Rule 607 dealing with such contracts, no matter whether the bankrupt is the lessee or the lessor.[1] This is not only an obvious implication of the broad term "executory contracts," but the Act and the Rules explicitly include in the term all unexpired leases.

In two respects the Act of 1938 introduced into § 70b provisions that literally relate to leases alone.[1a] The one refers to leases of real property only, the other to leases in general. They read as follows:

---

44 Gerber & Co., Inc. v. First Nat. Bank, 110 Conn. 583, 15 Am.B.R.(N.S.) 396, 148 Atl. 609.

45 See ¶ 70.66–70.68, infra.

46 § 18f.

47 (1966) 385 U.S. 99, 87 S.Ct. 274,

17 L.Ed.(2d) 197, discussed in detail in ¶ 70.31[1], supra, and ¶ 70.68, infra.

1 Fletcher v. Surprise (C.A. 7th, 1950) 180 F.(2d) 669, quoting Treatise, cert. den. (1950) 340 U.S. 834, 71 S.Ct. 58, 95 L.Ed. 605.

1a See also ¶ 70.43[2] and [9], supra.

# EXHIBIT D

4

# COLLIER BANKRUPTCY MANUAL

# COLLIER BANKRUPTCY MANUAL

## VOLUME 1

*As Revised*

by

**WILLIAM T. LAUBE**

*Professor of Law, University of California*
*Member of the National Bankruptcy Conference*

**W. J. HILL**

*Assistant Dean, University of California School of Law*
*Member of the State Bar of California*

and

**LAWRENCE P. KING**

*Professor of Law, New York University School of Law*
*Member of the National Bankruptcy Conference*

*1976 Revision*

by

**IRWIN HALL**
*Managing Editor*

**ROBERT J. D'AGOSTINO**
*Assistant Professor, Delaware Law School*
*Member of the New Jersey and Georgia Bars*

**BARRY L. FISHER**
*Member of the New Jersey Bar*

**KENNETH L. HALAJIAN**
*Member of the New York Bar*

**1978**

(Dates originally published: 1st edition 1948, 2nd edition 1954)



**MATTHEW BENDER**

235 E. 45TH STREET, NEW YORK, N.Y. 10017

¶ 70.33.  The Trustee as a Judgment Execution Creditor Under Section 70c
¶ 70.34.  Protected Transactions; Application of Section 70d
¶ 70.35.  Fraudulent Transfers in General; Section 70e(1)
¶ 70.36.  Transfers to Spouse, Children, or Near Relatives
¶ 70.37.  Withholding of Mortgage or Other Encumbrance From Record
¶ 70.38.  Bulk Transfers
          General Assignment for Benefit of Creditors
          Assignment, Pledge or Mortgage of Changeable Goods or Shifting
¶ 70.39.    Stocks in Trade and Accounts Receivable; Doctrine of Benedict v.
¶ 70.40.    Ratner and the U.C.C.
¶ 70.41.  Voidable Transfers in General. Section 70e(1)
¶ 70.42.  Mortgages and Security Interests in Personal Property; Recording
          Requirements in General
¶ 70.43.  Transfers Other Than Mortgages as Affected by Section 70e(1); Con-
          signments
¶ 70.44.  Preferences Voidable Under State Law
¶ 70.45.  Transfers Voidable Under Federal Law. Section 70e(1)
¶ 70.46.  Procedure, Practice, and Recovery Under Section 70e(1), (2), (3)
¶ 70.47.  Jurisdiction of Actions for Recovery or Avoidance Under Section 70e
¶ 70.48.  Parties to Suit Under Section 70e
¶ 70.49.  Nature of Action Under Section 70e
¶ 70.50.  Pleading, Practice, Evidence, and Burden of Proof
¶ 70.51.  Appraisal of Bankrupt's Property. Section 70f, g
¶ 70.52.  Power To Sell Bankrupt's Property. Section 70f.
¶ 70.53.  Practice in Bankruptcy Sales
          [1] Petition, Notice, and Order
          [2] Sale in Bulk or in Parcels
          [3] Terms of Sale
          [4] Minimum Price
          [5] Advertisement
          [6] Conduct of the Sale; Who May Bid
          [7] Confirmation or Denial Thereof; Setting Sale Aside
          [8] Effects of the Sale
¶ 70.54.  Sale Free of Liens and Encumbrances
¶ 70.55.  Redemption of Encumbered Property

## ¶ 70.00  General Analysis of Section 70.

Section 70 is an omnibus provision, dealing principally with the bankruptcy trustee's title and various phases thereof—a vital adjunct to any insolvency statute.

Thus, Subdivision a of Section 70 provides in great detail for the vesting of title to all the bankrupt's nonexempt property in the trustee as of the filing of the petition, and also emphasizes the exclusion of the bankrupt's exempt property. Subdivision b sets up certain requirements and restrictions concerning the trustee's duties with regard to the executory contracts (including unexpired real property leases) of the bankrupt.[1] Subdivisions f and g deal with the appraisal and sale

(Rel. No. 15—1974)  (Bkui. Man.)

[1] Rule 607 now supersedes the first four sentences of § 70b which fix certain time periods. See ¶ 70.28.

MANUAL    926

...nder Value Payable to In-
...natives
...e Insured, His Estate, or

...tion 70a(5)
...Section 70a(5)
...st, Devise, or Inheritance

...y
...st Stockholders, Members,

...ngent Interests.  Section

...or 'Fraud or Misrepresen-

...608
...t or Rejection by Trustee.

...s Available to the Bank-

...ment or a Lien by Legal
...1952, and 1966 Amend-

...nder Section 70c; Effect

...ion 70c
...as Affected by Section

...Other Equities

of the bankrupt's property, and the conveyance of title thereto following sale.[2] Subdivision h was repealed in 1952.[3] And subdivision i insures that upon the confirmation of an arrangement or plan under the debtor relief proceedings of the Act, the title to the debtor's property shall be revested in the debtor or bankrupt, "or vest in such other person as may be provided by the arrangement or plan or in the order confirming the arrangement or plan."

But Section 70 contains other provisions that, although they do not bear directly on the trustee's title, are equally important in the administration of the bankruptcy proceeding. In order to make certain that the trustee has everything the bankrupt could have had if bankruptcy had not intervened, the first sentence of Section 70c provides that the trustee shall have the benefit of all defenses available to the bankrupt as against third persons, including certain defenses often thought personal in character. Subdivision d of Section 70 stands as recognition of the fact that the filing of a bankruptcy petition does not bring to a complete halt the affairs of a bankrupt, or remove the frequent necessity for the bankrupt or others acting for him to deal in his property with third persons who, without more, do not know of the bankruptcy petition and act in good faith. Hence, Section 70d enumerates certain protected transactions that may be effected during the interval between the filing of the petition and the adjudication or the taking of possession by a bankruptcy receiver, whichever first occurs.

In addition, Section 70 contains two other provisions that add to the trustee's power and ability to set aside or avoid many transfers of or encumbrances on the bankrupt's property and thereby enable the trustee to increase the potential assets of the estate. These provisions also are a part of a well-developed general scheme incorporated in the Act for the purpose of affording an equal distribution of the bankrupt's property among the bankrupt's creditors. Under Section 70c, the trustee is given, as to all property of the bankrupt at the date of bankruptcy, the status of a creditor holding a judgment, or an execution returned unsatisfied, or a judicial lien through legal or equitable proceedings. Subdivision e permits the trustee to exercise whatever rights of avoidance any creditor holding a provable claim could have exercised on his own behalf under applicable state or federal law. When these provisions are considered in conjunction

---

[2] Rule 606 is derived from and supersedes parts of § 70f and g. See ¶¶ 70.51 and 70.52, supra.

[3] See ¶ 64.601 supra.

with those of Section 60, relating to the avoidance of preferences, Section 67a dealing with the voidability of liens obtained through legal proceedings within four months of bankruptcy, Section 67d pertaining to the setting aside of fraudulent conveyances, there becomes apparent the full arsenal of weapons with which the trustee may attack various transfers, encumbrances, or obligations and collect the assets of the estate thereby for equal distribution among creditors.

Standing alone, however, Section 70 would be somewhat incomplete. In order to understand the devolution of the bankrupt's title upon a bankruptcy trustee, properly appointed and qualified, we must consider and understand § 6 dealing with exempt property and Part II of the Rules which deal with the appointment and qualifications of a trustee. The duties of the trustee with regard to the bankrupt's property, its collection and distribution, as well as with regard to the bankrupt's exempt property, are governed by various rules of Part II and Part VI succeeding or modifying § 47 of the Act.[4]

Moreover, when we consider the ramifications of the trustee's duty and responsibility under the Act in liquidating the estate and securing all that rightfully may be claimed, we must necessarily refer to other provisions of the Act. Thus, the trustee may take steps to protect the estate by injunction under Section 2a(15);[5] he may, under Rule 604 and 701(1), invoke the summary jurisdiction of the bankruptcy court against nonbankruptcy liquidation officers or general assignees holding the bankrupt's property; he may pursue turnover proceedings against the bankrupt or others; defend against reclamation petitions; contest the allowance of claims; intervene under Rule 610 superseding Sections 11b and 11c and prosecute or defend any pending suits by or against the bankrupt; bring suits on any causes of action belonging to the bankrupt, within the limit of time set forth in Section 11e, and operate the bankrupt's business when authorized by the court. These provisions and many more give the trustee every facility to carry out the purposes of the Act and to protect and enforce the title conferred upon him by Section 70a.

## ¶ 70.01. Title to Bankrupt's Property Vested in Trustee; Nature of Title. Section 70a.

Section 70a provides that the trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law as of the

4 For a full discussion of these rules, see Chapter 47.

5 Note that Rule 401 and Rule 611 stay certain proceedings automatically.

(Re. No. 15—1974)     (Bank: Man.)

the bare legal title in constructive trust for the creditors entitled to the beneficial interest and for a trustee to be appointed upon a re-opening of the estate.[8]

## ¶ 70.28. Executory Contracts and Leases; Assumption or Rejection by Trustee. Section 70b.

A contract which at the filing date was not completely performed by either the bankrupt or the other contracting party confronts the trustee with the alternative to assume or to reject it. He does not by virtue of his appointment and qualification ipso facto become liable upon the bankrupt's covenants and agreements. Nor does the institution of bankruptcy proceedings or the trustee's appointment and qualification, without more, in any way dissolve or terminate the contractual relationship between the bankrupt and the other party, unless the contract itself clearly so provides. Rule 607, derived from § 70b, gives the trustee 30 days from his qualification to assume executory contracts by a written statement filed with the court. The trustee should, where practicable, obtain court approval for such assumption. Any contract not assumed within 60 days after qualification is deemed rejected. This additional 30 days affords creditors the opportunity to move the court to order the assumption of contracts that appear advantageous. But where the contract is not scheduled and the trustee does not discover it, the presumption of rejection is inoperative.[1]

If the trustee, by neglect of his official duties, allows a contract to be rejected to the detriment of the creditors, he could be subject to disciplinary measures or be liable for a surcharge.

If no trustee qualifies then executory contracts are deemed rejected 60 days after the order directing no trustee be appointed is handed down, unless the court orders otherwise. The alternative mode under § 70b of fixing time for rejection from the date of adjudication is eliminated.

The bankruptcy court may, for cause shown, within the original 60 days period extend or reduce the time specified for assumption or rejection of executory contracts.

Once a contract is rejected, Rule 906(b)(2) does not permit extension of the time to permit assumption later on.

8 See cases cited in N. 1 supra.

1 Texas Western. Fin. Corp. v. Mc-Craw Candies, Inc., 347 F.Supp. 445 (N.D. Tex. 1972), citing Treatise. This case was decided under §70b, but the result would be the same under Rule 607.

(Rel. No. 15—1974)    (Bank. Man.)

s closed. If a case is
that has been sched-
ed with the approval
reopening the case,

d estates when valu-
515.

has a "reasonable"
or abandoning an
.[8] The trustee may
any profit to be ex-
ait.[4]

s the trustee of his
o unforeseen subse-
asset will allow the
estate.[5] Mere in-
ment.[6] Where prop-
perty is determined
invalidate the liens

abandoned. If the
e trustee by virtue
n the sense that he
le may in the case
tle can scarcely be
state of abeyance.
pt as holding only

ment can also afford
estate. In re Pelumba,
340 (W.D. Va. 1967).

N. 1 Supra; Hill v.
F. Supp. 469 (W.D.
; see Brookhaven Bank
vin, 253 F.2d 17 (5th
g Treatise.

; Beck v. Unruh, 31
1 P.2d 13 (1951); In
. Supp. 605 (D. Mass.

step, 237 S.W.2d 647
1951).

Clearly, the time limitations have been inserted largely for the benefit of the other contracting party, and creditors who expect a benefit from the assumption of a contract should be on their guard to secure any necessary extension, in the absence of a trustee, and to submit satisfactory evidence to show the desirability of protracted deliberation. On the other hand, the other party to the contract, for whose benefit the time limitations have been imposed, may oppose any motion to extend the period by showing that any such extension would result in an unwarrantable inconvenience to him, if not in actual damage.

In deciding whether or not a contract should be assumed, the prospective benefit to the estate is an important, if not the decisive, consideration.[2] But it should not be overlooked that normally such assumption entails the assumption of liabilities and in this connection it should be carefully considered whether or not the estate, either due to the assumption of the contract or possibly with the help of other available funds, is financially in a position to accept liabilities as a first charge on the estate. The court must be watchful to use its authority and make its administrative decisions so as not to cause unwarranted injury to the interest of a contracting party by compelling the latter to perform without first ascertaining the availability of the necessary funds to carry out the bankrupt's duties thereunder.

Assumption of a contract is an act requiring notification of the party concerned.[2] Since, as we have seen, assumption presupposes approval of the court, service of the court's order will be the normal procedure.

The purpose of the last sentence of Section 70h, which is particularly important with regard to leases, is to protect the other party against the substitution of an undesirable or irresponsible assignee.

The trustee's assumption of an executory contract operates as a complete transfer of all the bankrupt's contractual rights and contractual liabilities therein.[3] The transfer is not cumulative in effect

2 In re Forgee Metal Prods., 229 F.2d 799 (3d Cir. 1956), citing Treatise.

For a case involving assumption by conduct, see Larkins v. Sills, 377 F.2d 1 (5th Cir. 1967), citing Treatise.

Oral notice suffices. Nostrome, Inc.

—that is, the
jointly or sev
elimination o
tions, and hi

Another in
tory breach o
the contract
or gives the
may not frus
an anticipat
structively v
chooses to as
and the trus
ages.[5] Assu
validly assu
ity under th

The same
trustee reje
is entitled t
effect of rej
stitutes a br
damages,[8]
in Rule 30[
tempt to p
the party,
bankrupt h
prive the o
share.[9]

For a case
phasized, se
329 F.2d 73

4 Rosenblu
480, 256 Fe

Assumptio
property bi
all the co
Mesa. Steel
(D. Ariz. 1

5 Planter
Am. B.R. 2
App. 1918)

v. Fahrenkrog, 388 F.2d 82 (8th Cir. 1968), citing Treatise.

3 Greif Bros. Cooperage Co. v. Mellnix, 45 Am. B.R. 265, 264 Fed. 391 (8th Cir. 1920). See also In re Italian Cook Oil Corp., 190 F.2d 994 (3 dCir. 1951); Texas & N.O.R.R. v. Phillips, 196 F.2d 692 (5th Cir. 1952).

—that is, the trustee is not added to the bankrupt as another debtor, jointly or severally liable with the bankrupt. It involves a complete elimination of the bankrupt, his discharge from his contractual relations, and his replacement by the trustee.[4]

Another important effect of assumption is to purge any anticipatory breach of contract based on the fact of bankruptcy itself. Unless the contract clearly provides that bankruptcy terminates the contract or gives the other party an option to terminate it, the other party may not frustrate the purpose of Section 70h or Rule 607 by asserting an anticipatory breach, except where the contract is actually or constructively rejected. If the trustee, within the prescribed time limits, chooses to assume the contract, the anticipatory breach is eliminated and the trustee may sue the other party for the performance or damages.[5] Assumption is irrevocable in the sense that once a contract is validly assumed by the trustee, he is estopped from denying his liability under the contract.[6]

The same principles apply in the event of rejection. Hence, if the trustee rejects or is deemed to have rejected a contract, the other party is entitled to rely upon the rejection and to act accordingly.[7] The effect of rejection, actual or constructive, is that such rejection constitutes a breach of contract giving the other party the right to claim damages.[8] This claim must be proved within the period provided in Rule 302. The trustee may, however, go further. He may attempt to rescind the contract altogether, and by surrendering to the party, with the latter's consent, the property received by the bankrupt he may succeed in nullifying the contract and thereby deprive the other party even of any provable claim to a distributive share.[9]

For a case in which this point is emphasized, see Kirby v. United States, 329 F.2d 735 (10th Cir. 1964).

[4] Rosenbaum v. Uber, 4 3Am. B.R. 480, 256 Fed. 584 (3d Cir. 1919).

Assumption of a contract to sell real property binds the trustee to perform all the covenants thereunder. *In re* Mesa Steel Corp., 229 F. Supp. 669 (D. Ariz. 1964), citing Treatise.

[5] Planters Oil Co. v. Gresham, 42 Am. B.R. 29, 202 S.W. 145 (Tex. Civ. App. 1918).

[6] Greif Bros. Cooperage Co. v. Mullinix, N. 5 *supra*.

[7] Fletcher v. Surprise, 180 F.2d 669 (7th Cir. 1950); Resnick v. Aetna Sheet Metal Works, 146 Conn. 565, 153 A.2d 435 (1959), citing Treatise. Staudinger v. Limbach. Co. 308 F. Supp. 696 (E.D. Wis. 1970).

[8] Seedman v. Friedman, 51 Am. B.R. (N.S.) 63, 132 F.2d 290 (2d Cir. 1942).

[9] Kenyon v. Mulert, 26 Am. B.R. 184, 184 Fed. 825 (3d Cir. 1911).

d largely for the
ors who expect a
be on their guard
a trustee, and to
ity of protracted
the contract, for
osed, may oppose
ny such extension
o him, if not in

assumed, the pro-
not the decisive,
t normally such
d in this connec-
r not the estate,
bly with the help
to accept liabili-
be watchful to
ions so as not to
racting party by
aining the avail-
ankrupt's duties

tification of the
tion presupposes
ll be the normal

which is particu-
the other party
onsible assignee.

t operates as a
rights and con-
ulitative in effect

F.2d 82 (8th Cir.
ise.

perage Co. v. Mulli-
, 264 Fed. 391 (8th
*In re* Italian Cook
994 (3 dCir. 1951);
. Phillips, 196 F.2d
).

# COLLIER BANKRUPTCY MANUAL

**1**

# COLLIER BANKRUPTCY MANUAL

## THIRD EDITION

**LAWRENCE P. KING**
EDITOR-IN-CHIEF

## VOLUME 1

1979

*(Dates originally published: 1st edition 1948, 3rd edition 1979)*



**MATTHEW BENDER**

235 E. 45TH STREET, NEW YORK, N.Y. 10017

# CHAPTER 365

## Executory Contracts and Unexpired Leases
### BANKRUPTCY CODE, Section 365
### (11 United States Code § 365)

### Synopsis

¶ 365.01.  In General
¶ 365.02.  Changes From Prior Law
    [1]—Ipso Facto Clauses
    [2]—Time Period for Assumption and Rejection
¶ 365.03.  Powers of the Trustee
¶ 365.04.  Additional Protection for Contracting Parties
    [1]—Shopping Center Leases
    [2]—Rejection of Lease by Debtor-Lessor
    [3]—Rejection of Executory Contracts for Sale of Real Property
¶ 365.05.  Other Provisions

## ¶ 365.01.  In General.

Section 365 is designed to balance the rights and expectations to those who have contracted with the debtor against the need for broad powers vested in the trustee or debtor in possession to determine what treatment should be given to executory contracts and unexpired leases of the debtor. In authorizing the trustee to assume or reject such contracts and leases, inherent conflicts arise. On the one hand, the trustee's assumption of a contract or lease might benefit the estate of the debtor but, under the circumstances, the other contracting party might lose its benefit of the bargain.[1] On the other hand, it might benefit the estate for the trustee to reject a contract or lease that is advantageous to the other party. The resolution of such conflicts is the purpose of section 365. The conflict is resolved by giving the trustee broad authorization to assume or reject any executory contract or unexpired lease of the debtor subject to the several exceptions which appear both within section 365 and elsewhere in the Bankruptcy Code.[2]

In deciding whether a contract should be assumed, the prospec-

---

[1] See, e.g., discussion of shopping center leases, ¶ 365.04 infra.

[2] See ¶ 365.03 infra.

tive benefit to the estate is an important, if not the decisive, consideration. But it should not be overlooked that such assumption entails the assumption of liabilities and in this connection it should be carefully considered whether or not the estate, either due to the assumption of the contract or possibly with the help of other available funds, is financially in a position to accept liabilities as a first charge on the estate.

There is no specific definition as to what constitutes an executory contract but generally, contracts on which material performance remains due to some extent on both sides are executory.[3] If performance on one side of the contract is completed, the contract is no longer executory. Unexpired leases are specifically included in section 365.

The trustee's assumption of an executory contract operates as a complete transfer of all of the debtor's contractual rights and connection.[4] The transfer is not cumulative in effect —that is, the trustee is not added to the debtor as another debtor jointly or severally liable. It involves a complete elimination of the debtor, his discharge from his contractual relations, and his replacement by the trustee.[5]

Section 365 carries forward the provisions of Section 70b of the old Act, whereas other provisions effect major changes from Section 70b and Bankruptcy Rule 607, particularly in the treatment of ipso facto clauses which automatically terminate the contract or lease in the event of bankruptcy. Such clauses which had been given effect are no longer enforceable under section 365. Section 365 also includes provisions that had no parallel in the Act. One of the more important of these provisions provides special protection for lessors who enter into shopping center leases with the debtor. This provision was necessitated by the problems of tenant mix

---

[3] H.R. Rep. No. 595, 95th Cong., 1st Sess. 347 (1977).

[4] Greif Bros. Cooperage Co. v. Mullinix, 264 F. 391 (8th Cir. 1920). See also Schokbeton Industries, Inc. v. Schokbeton Products Corp. 466 F.2d 171 (5th Cir. 1972).

For a case in which this point is em-

phasized, see Kirby v. United States, 329 F.2d 735 (10th Cir. 1964).

[5] Rosenblum v. Uber, 256 F. 584 (3d Cir. 1919). Assumption of a contract to sell real property binds the trustee to perform all the covenants thereunder. In re Mesa Steel Corp, 229 F. Supp. 669 (D. Ariz. 1964), citing Collier.

which are peculiar to these carefully planned centers of retail activity.

## ¶ 365.02.   Changes From Prior Law.

Section 365 of the Code substantially alters Section 70b of the Act in two areas. Subsection (e) invalidates ipso facto clauses in which the executory contract or unexpired lease of the debtor is to be terminated or modified upon the insolvency of the debtor, the commencement of a case under the Code, or the appointment or taking possession by a custodian or trustee. Subsection (d)(1) provides for a 60-day period for the assumption or rejection, by the trustee, of the debtor's executory contracts and unexpired leases which modifies the time period provided for in Section 70b of the Act and Rule 607. The 60-day period begins to run with an order for relief and applies to liquidation cases only.

### [1]—Ipso Facto Clauses.

Section 365(e)(1) provides that notwithstanding a provision in an executory contract or unexpired lease, or in an applicable law, such contract or lease of the debtor may not be terminated or modified after the commencement of a case under the Code because of an ipso facto clause. Such a clause is a provision in a contract or lease which requires or allows termination because of the insolvency or financial condition of the debtor, the commencement of a case under the Code, or the appointment or taking possession by a trustee or custodian. This is in sharp contrast to the provision in Section 70b which specifically allowed enforcement of a covenant that a lease shall be terminated if there is an assignment by operation of law or because of the bankruptcy of a specified individual. Subsection (e)(1) also supersedes state law that allows enforcement of such clauses.

Section 365(b) also curtails the enforcement of ipso facto clauses. This section creates certain limitations on the trustee's power to assume a contract or lease by requiring that the trustee cure any default in such contract or lease and that he provide adequate assurances of future performance. These limitations to the

(Pub. 224)

# EXHIBIT E

5

# COLLIER ON BANKRUPTCY ®

## FIFTEENTH EDITION

VOLUME 2

Lawrence P. King
*Editor-in-Chief*

1996

*Current Through:*
RELEASE NO. 59, AUGUST 1996

MATTHEW ◆ BENDER

## ¶ 365.01.  Executory Contracts and Unexpired Leases.

### [1]—Prior to Act of 1938.

The concept of the rejection of executory contracts had its roots in the principle that a trustee in bankruptcy might renounce title to and abandon burdensome property.[1] It was generally agreed that with respect to the bankrupt's executory contracts the trustee had the power either to assume or renounce the contracts, as he deemed best for the interests of the estate.[2] This option involved not only a privilege but also a duty to ascertain within a reasonable period of time whether or not there was a possible profit in the contract for the estate.[3] The duty and privilege were said to be the trustee's, but there was language to the effect that the trustee's act consisted in a mere suggestion or application to the bankruptcy court, which by its order authorized the trustee either to reject or to assume the contract, as the court deemed best in the interest of the estate.[4]

---

[1] *See* Sunflower Oil Co. v. Wilson, 142 U.S. 313, 12 S. Ct. 235, 35 L. Ed. 2d 1025 (1891); Sparhawk v. Yerkes, 142 U.S. 1, 12 S. Ct. 104, 35 L. Ed. 2d 915 (1891) dealing with obligations incident to membership in a stock exchange. The antecedent of U.S. executory contracts law was Copeland v. Stevens, 106 Eng. Rep. 218 (K.B. 1818). *See* Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection,"* 59 U. Colo. L. Rev. 845, 856 (1988).

[2] Central Trust Company of Illinois v. Chicago Auditorium Association, 240 U.S. 581 (1916), noted in 16 Col. L. Rev. 515 (1916); 14 Mich. L. Rev. 593 (1916); Watson v. Merrill, 136 Fed. 359 (8th Cir. 1905); Matter of Lathrap, 61 F.2d 37 (9th Cir. 1932); Barr v. Youngsville Sugar Factory, Ltd., 141 La. 869, 75 So. 805 (1917).

[3] Sunflower Oil Co. v. Wilson, 142

U.S. 313 (1891); Planters' Oil Co. v. Gresham Tex. Civ. App., 202 S.W. 145 (1918); Atchison, Topeka & Santa Fe Ry. Co. v. Hurley, 153 F. 503 (8th Cir. 1907) *aff'd,* 213 U.S. 126, 29 S. Ct. 466, 53 L. Ed. 729 (1909); United States Trust Co. v. Wabash W. Ry. Co., 150 U.S. 287, 14 S. Ct. 86, 37 L. Ed. 1085 (1893); Matter of Otis, 101 N.Y. 580, 5 N.E. 571 (1886).

[4] *In re* Grainger, 20 Am. B.R. 166, 160 F. 69 (9th Cir. 1908); Matter of Schilling and Loller, 251 Fed. 966 (D.C. Ohio 1918); *See particularly* Greif Bros. Cooperage Co. v. Mullinix, 264 F. 391, 396 (8th Cir. 1920). "The referee in bankruptcy and the trustee, with his consent, were vested with the power and charged with the duty to accept, adopt and perform that contract or to renounce it. . . ." In this case it was the other party to the contract that petitioned for its assumption.

(Matthew Bender & Co., Inc.)          (Rel.55-8/95  Pub.219)


If the trustee, thus authorized by the court, elected to assume a contract, he or she was required to take it *cum onere*—that is, subject to all its provisions and conditions.[5]

But there was one feature of the law as applied to executory contracts that distinguished them from all other property that might or might not be burdensome. It was said that contrary to the usual rule, the title to the bankrupt's executory contracts or leases (which were included in that category) did not vest in the trustee as of the time prescribed in Section 70a, but rather vested only upon the affirmative act of adoption, though with retroactive effect so that such adoption related back to the time specified in Section 70a.[6] The rationalization for this was that executory contracts and leases involved future liabilities as well as rights, and the estate should not be charged with these except when they were clearly assumed upon due deliberation.[7] It was also felt that should title be regarded as passing automatically difficulties of reconveyance to the bankrupt might ensue.[8]

[5] *Atchison, Topeka & Santa Fe Ry. Co. v. Hurley*, n.3 *supra*; Gerber & Co., Inc. v. First Nat. Bank, 110 Conn. 583, 148 Atl. 669 (1930); *cf.* Matter of Capital Service, Inc., 136 F. Supp. 430, 437 (S.D. Cal. 1955); *In re* Schenectady Ry., 93 F. Supp. 67 (N.D.N.Y. 1950); In *Greif Bros. Cooperage Co. v. Mullinix*, n.4 *supra*, the court said:

> When the trustee in bankruptcy by order of the referee or of the court elects to ratify, confirm and adopt the executory contract of the bankrupt, he thereby assumes the liabilities of the bankrupt thereunder and takes the contract in the same plight in which the bankrupt held it.

See also the cases cited in the *Greif Bros.* case and the following to the same effect: *In re* De Long Furniture, 188 F. 686 (E.D. Pa. 1911); Matter

of Dermer, 56 F.2d 223 (S.D. Cal. 1931) (right of vendor of land to terminate sales contract upon default and to claim rent paid by subtenants).

[6] Matter of Frazin & Oppenheim, 183 F. 28 (2d Cir. 1910) (lease); *Watson v. Merrill*, n.2 *supra*, followed by Matter of Berry, 247 Fed. 700 (E.D. Mich. 1917). To the same effect, *see In re* Scruggs, 205 F. 673 (S.D. Ala. 1913); Kirstein Holding Co. v. Bangor Veritas, Inc., 131 Me. 421, 163 Atl. 655 (1933) (lease); Matter of McCrory Stores Corp., 69 F.2d 517 (2d Cir. 1934) (lease); Matter of Sherwood's, Inc., 210 F. 754 (2d Cir. 1913) (lease).

[7] *Watson v. Merrill*, n.6 *supra*; Matter of Frazin & Oppenheim, n.6 *supra*.

[8] Matter of Frazin & Oppenheim, n.6 *supra*.

(Rel.55-8/95 Pub.219)

although this point was probably overdrawn and indeed was disputed.[9]

## [2]—Act of 1938.

To some extent Section 70b as enacted by the Act of 1938 was merely declaratory of the case law prior to 1938, as outlined previously in this paragraph.[10] Subsection b, however, contained certain specific provisions with respect to leases, dealing with rejection by the trustee of a bankrupt lessor[11] and with bankruptcy termination clauses.[12]

The advantages of a statutory provision, as against mere case law, are obvious. The existence of the provision eliminates a defense sometimes raised by the trustee when faced by an impatient creditor's request to "put up or shut up," namely that there was no provision of law requiring the trustee to elect.[13] Moreover, case law cannot prescribe a fixed, as distinguished from a "reasonable," period of time within which the election must be made. Such a limitation is highly desirable in the interest of expeditious administration and clarification of the rights of the parties.[14] However, Section 70b could hardly be said to be free from ambiguities. It referred to "any executory contract." The term "executory" as applied to a contract is equivocal and quite possibly in the bankruptcy context has a rather different, more limited meaning than under state law.[15]

[9] See dissenting opinion of Circuit Judge Ward in Matter of Frazin & Oppenheim, n.6 supra.

[10] See Analysis of H.R. 12889, 74th Cong., 2d Sess. (1936) 227; Weinstein, The Bankruptcy Law of 1938, A Comparative Analysis (prepared for the National Association of Credit Men (1938)) 159–160, see also Turner, Bankruptcy and Executory Contracts, 41 Title News 114 (1962).

[11] See ¶ 365.09 infra.

[12] See ¶ 365.06 infra.

[13] See Kenyon v. Mulert, 184 F. 825 (3d Cir. 1911). See Silverstein, Rejection of Executory Contracts in Bankruptcy and Reorganization, 31 U. Chi. L. Rev. 467 (1964).

[14] For a case demonstrating "the difficulties which are likely to arise when Trustees in bankruptcy fail to expressly adopt or reject executory contracts as expediently [sic] as possible," see In re Public Ledger, Inc., 63 F. Supp. 1008 (E.D. Pa. 1945), rev'd, 161 F.2d 762 (3d Cir. 1947), discussed in n.18 infra.

[15] Professor Williston has suggested that "all contracts to a greater or less extent are executory. When they cease to be so they cease to be contracts." 1 S. Williston, Contracts § 14 (3d ed. 1957).

(Matthew Bender & Co., Inc.)