# DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
BOCA RATON
WILMINGTON
CHERRY HILL
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

WILLIAM C. HEUER
DIRECT DIAL: 212.692.1070
PERSONAL FAX: 212.208.4521
E-MAIL: wheuer@duanemorris.com

www.duanemorris.com

November 5, 2009

**VIA HAND DELIVERY**

Hon. Stuart M. Bernstein
United States Bankruptcy Court
  for the Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re: In re New York Skyline, Inc., Chapter 11 Case No. 09-10181 (SMB)

Dear Judge Bernstein:

Our firm is co-counsel to Empire State Building Company L.L.C. and Empire State Building, Inc. in the New York Skyline, Inc. chapter 11 bankruptcy case. We write to Your Honor in response to the Court's October 28, 2009 invitation for additional submissions on the question of whether the Debtor's assumption of its Lease and License Agreement with ESB precludes the Debtor from continuing to seek rescission of the May 2005 Settlement Agreement in the post-assumption context.

### Background

The Debtor commenced its voluntary chapter 11 case on January 12, 2009. Months prior to that, in August 2008, the Debtor had commenced litigation against ESB. In that litigation, the Debtor sought the equitable remedy of rescission of parts of a May 2005 Settlement Agreement between ESB and the Debtor. The May 2005 Settlement Agreement was a modification of the underlying Lease and License Agreement between ESB and the Debtor. At the same time, the Debtor also asserted legal claims for damages arising out of alleged breaches of the May 2005 Settlement Agreement, despite the fact that the equitable and legal claims it asserted were antithetical to each other: as a matter of law, the availability of a legal claim for damages precludes the equitable remedy of rescission.

The Debtor's business operates from one business location: the Debtor's leased premises at the Empire State Building. It was evident from the first day of the Debtor's chapter 11 case that assumption or rejection of the Lease and License Agreement were critical issues in this case. Without assumption, there would be no business to operate or reorganize. The Debtor's business could not be relocated and remain viable. This point is beyond credible dispute.

As of the Petition Date, the timeframe within which the Debtor could assume or reject the Lease was firmly established by statute. There was no mystery to the fact that, at most, the Debtor would have 210 days within which to determine whether to assume the Lease and persuade the Court that it was appropriate for the Debtor to do so. Yet, the Debtor took no action to resolve the fundamental question that the Debtor itself had raised and which had to be answered in its chapter 11 case: What terms are included in the Lease that the Debtor had to assume within 210 days?

After seven weeks of inaction by the Debtor, ESB commenced Adversary Proceeding No. 09-01107, seeking a declaration, *inter alia*, that the May 2005 Settlement Agreement constituted a modification of the Lease and License Agreement. ESB sought a declaration that there was one agreement to be assumed or rejected. The Debtor could not seek rescission of just part of that single contract. We note that ESB – not the Debtor – took action to have the critical issue in this case resolved as quickly as possible.

In response, the Debtor sought to reinvigorate its then-seven month old state court lawsuit by attempting to have its claims move forward in that court. The Debtor did not seek to have the critical issue in this case resolved in this Court on an expedited basis; rather, the Debtor took the transparent step of trying to bring resolution of that critical issue to a grinding halt on the state court docket. The Debtor was content to have its already seven month old lawsuit continue at a glacial pace.

ESB was not. ESB removed the Debtor's state court action to this Court.

In response, the Debtor took further action to delay resolution of the critical issue in this case, despite the fact that the 210 day clock continued to tick. The Debtor sought remand of its then-removed state court action, and asked the Court to abstain from moving forward with ESB's streamlined Adversary Proceeding which targeted determinations that would be critical for assumption or rejection. Incredibly, at the very same time the Debtor took these actions, the Debtor was forced to seek an extension of time to assume or reject the Lease, because the Debtor had allowed to lapse its entire 120 day statutory period for assumption of the Lease.

After argument, the Court granted the Debtor a statutory 90 day extension of the period within which the Debtor could assume the Lease, but denied the Debtor's motions for abstention and remand. The Court determined that the parties should proceed on an expedited basis with the issues that were critical to the ultimate question in the case: Would and could the Debtor assume the Lease, and what terms would be included in the Lease that the Debtor would be required to assume *cum onere*? The Court expressed skepticism regarding the Debtor's claim that it could rescind just a few provisions of the May 2005 Settlement Agreement, rather than the entire agreement, and the Debtor abandoned that approach. The Court directed the parties to confer and identify just those claims that were central to assumption of the Lease, and to move forward without delay. The parties did so, and on May 26, 2009, the Court entered an agreed-upon scheduling order. Trial was set to begin on August 3, 2009.

Without having given any prior indication to the Court or ESB, at argument on the parties' motions for summary judgment (held on July 28, 2009), the Debtor advised the Court and ESB that it was going to seek assumption of the Lease regardless of whether the Debtor was able to rescind the May 2005 Settlement Agreement. Two months of proceeding with discovery at a frantic pace were wasted. Motions for summary judgment were prepared and filed. Experts were retained and prepared reports. Both the Debtor and ESB were put to considerable expense for no reason. After all that work, the Debtor simply decided at the very last minute that it no longer wanted to go to trial on the critical question of "what constitutes the Lease," and decided that it would seek to assume the Lease no matter what the outcome of its underlying claims. Because of the Debtor's change of position, the Court and parties did not proceed to trial. The critical underlying question remained unresolved when the Debtor ultimately sought to assume the Lease, because the Debtor conceded that rescission was no longer critical to assumption. Indeed, the Debtor's motion to assume -- and the assumptions upon which the motion is based -- had, as their basis, the benefits the Debtor derives from the May 2005 Settlement Agreement.

After a hearing on August 5, 2009, the Court determined that the Debtor could assume the Lease and License Agreement, but invited the parties to submit letter briefs on the question of whether assumption of the Lease and License Agreement precluded the Debtor's continued pursuit of a rescission claim. Both ESB and the Debtor submitted letter briefs on the point. A copy of ESB's letter brief is attached hereto. Then, by letter dated October 27, 2009, ESB advised the Court of the recent decision of the District Court in *Dev. Specialists, Inc. v. 1114 6th Ave. Co. L.L.C. (In re Coudert Bros LLP)*, Case No. 09-CIV-5047 (DLC) (Sept. 4, 2009). The Court then invited additional submissions regarding the impact of assumption on the Debtor's rescission claim.

## Discussion

*In re Coudert Bros.* is directly on point, and can be viewed as the meeting point for a number of arguments that have been advanced by ESB in this case.

### A. Assumption of a Modified Contract

*In re Coudert Bros.* involved the question of whether a subsequent agreement (i) is simply an amendment of the underlying agreement to which it relates, or (ii) includes changes to the underlying agreement, which makes the subsequent agreement a "modification" of the underlying agreement (rather than an amendment). *See In re Coudert Bros.* at pp. 9-11. The relevant distinction is that an amendment is severable from the underlying agreement (and can be separately assumed or rejected), whereas a modification results in there being just one contract which cannot be severed (nor can it be separately assumed or rejected). *Id.* at p. 10.

The first argument made by ESB in its Motion for Summary Judgment and/or Dismissal of certain claims asserted by the Debtor makes this very point. ESB noted in detail the degree to which the May 2005 Settlement Agreement modified the Lease and License Agreement. In



making this argument, ESB relied upon *In re S.E. Nichols Inc.*, 120 B.R. 745 (Bankr. S.D.N.Y. 1990). *See* ESB Motion for Summary Judgment and Dismissal (a copy of which is attached hereto). Similarly, in *In re Coudert Bros.*, the District Court relied upon *In re S.E. Nichols Inc.*, found that a modification was involved, and affirmed the Court's finding that assumption of the underlying agreement also constituted assumption of the subsequent agreement because of the simple fact that the subsequent agreement effected a modification. As a result, there was only one contract to be considered for purposes of assumption. *Id.* at p. 10. ESB respectfully submits that application of the *In re Coudert Bros.* analysis, here, leads to the conclusion that the May 2005 Settlement Agreement constitutes a modification of the Lease and License Agreement and that there was only one agreement for the Debtor to assume. The Debtor has assumed that agreement, and its partial rescission claim fails as a matter of law.

Beyond the failure of the Debtor's partial rescission claim as a matter of law, there are additional legal consequences arising out of assumption that preclude a rescission claim. One of those legal consequences was addressed by District Judge Cote in the *In re Coudert Bros.* decision. The District Court affirmed the Court's determination that assumption of the agreement precluded the state law avoidance action at issue (fraudulent transfer).[1] ESB's August 14 letter brief to the Court demonstrates that the New York state law remedy of rescission is also characterized as an avoidance action. ESB respectfully submits that application of the *In re Coudert Bros.* analysis leads to the conclusion that the Debtor's state law avoidance action – in the nature of rescission – is barred as a result of the Debtor's assumption of the underlying agreements to which the rescission claim applies.

*In re Coudert Bros.* resolves two important questions in this case. On the pre-assumption question of "what constitutes the Lease," the *In re Coudert Bros.* analysis applies and is favorable to ESB. It demonstrates that the May 2005 Settlement Agreement was a modification of the underlying Lease and License Agreement, and that there was only one agreement to be assumed or rejected (*i.e.*, the Debtor could not seek to rescind just the May 2005 Settlement Agreement, because it is part of a single contract). On the post-assumption question of "what is the effect of assumption on the Debtor's rescission claim," the *In re Coudert Bros.* analysis also applies, and is also favorable to ESB. There was one modified contract for the Debtor to assume, and the Debtor chose to assume it. For whatever reason, the Debtor made the strategic decision to walk away from trial on the merits of the rescission count and conceded that its claim for rescission was irrelevant to its strategy regarding assumption. Rescission should now be barred.

---

[1] *See* Complaint in Adversary Proceeding No. 08-01418(RDD). The first cause of action in that proceeding was based on 11 U.S.C. § 548, and the second cause of action is based upon New York state fraudulent transfer law.



B.      Estoppel and Response to Debtor's August 14, 2009 Letter Brief

i.    *Estoppel*

Not only should the Debtor's pursuit of rescission be barred as a matter of law, it should also be barred by application of principles of estoppel. In *In re Coudert Bros.*, the District Court analyzed the Second Circuit's decision in *Eastern Air Lines, Inc. v. Ins. Co. of State of Pa. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992 (2d Cir. 1996), and noted: "'Where a debtor has been permitted by the bankruptcy court to assume a contract pursuant to § 365, equitable estoppel principles may be applied by the court to deny the debtor permission to escape its obligation to perform the contract it assumed.'" *Id.* at p. 8 (quoting *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 1000 (2d Cir. 1996). In *In re Ionosphere Clubs, Inc.*, the Second Circuit relied upon *In re Superior Toy & Manuf. Co., Inc.*, 78 F.3d 1169 (7th Cir. 1995).

*In re Superior Toy & Manuf. Co., Inc.*, is discussed in detail in ESB's August 14, 2009 letter brief to the Court. That case stands for the proposition that by assuming the Lease and License Agreement, the Debtor has been divested of any right it once may have had to pursue a claim for rescission. Assumption changes things. Estoppel applies.

Estoppel is particularly appropriate to the facts at hand. It was evident even while the Debtor was in the pre-bankruptcy planning stage that assumption of the Lease and License Agreement was going to be a major event and critical issue in this chapter 11 case. Despite that evident consideration, the Debtor took no action to expedite its already-several-months-pending state court lawsuit. The Debtor sat by and let time pass. Once in chapter 11, the Debtor took the same approach. Time passed with no action. ESB then sought to jump-start litigation on the fundamental question of "what are the terms of the Lease and License Agreement that would have to be assumed or rejected." The Debtor then tried to prevent ESB from moving forward on an expedited basis. The Debtor argued abstention and remand, steps which had the effect of keeping litigation from progressing. It was only after the Court denied remand and abstention that the Debtor consented to move forward to trial on an expedited basis in this Court. Then, after two months of expedited litigation and after motions for summary judgment were fully briefed and submitted, the Debtor conceded that rescission was irrelevant. The Debtor would assume the Lease, irrespective of its rescission claim. On these facts, and consistent with the analysis in *In re Coudert Bros.*, application of estoppel principles is appropriate in the post-assumption context to preclude the Debtor's rescission claim.[2]

Similar to, although distinct from, estoppel, is New York law regarding election of remedies. As the court stated in *SOFI Classic S.A. de C.V. v. Hurowitz*: "New York's 'election

---

[2] *See Vision Metals, Inc. v. SMS Demag (In re Vision Metals, Inc.)*, 327 B.R. 719, 723-4 (Bankr. D. Del. 2005) (applying judicial estoppel to preclude avoidance action because pursuit of such actions was: "inconsistent with the success [the debtor] achieved in convincing the Court earlier that assumption of the [agreement] was in the best interest of Vision and its creditors. Since it was successful in the prior action, judicial estoppel precludes Vision from now asserting that the [agreements] should be avoided.").



Hon. Stuart M. Bernstein
November 5, 2009
Page 6

of remedies' doctrine provides that 'one may not both affirm and disaffirm a contract . . . or take a benefit under an instrument and repudiate it.'" 444 F. Supp. 2d 231, 238 (S.D.N.Y. 2006) (citations omitted). When a litigant pursues a course of action and "gain[s] an advantage" by doing so, election of remedies effect attaches. *See id.* Indeed, New York's election of remedies law applies in circumstances where a party affirms a contract to gain an advantage, but later seeks to repudiate that contract, to bar the later action which is inconsistent with affirmance. *Id.*[3]

Here, the Debtor has chosen to assume the Lease and License Agreement. The Debtor assumed those agreements with the May 2005 Settlement Agreement fully intact. The Debtor continues to take advantage of the benefits it obtained through the May 2005 Settlement Agreement. ESB has been required, *by an order of this Court*, to continue to perform according to the terms of the Lease and License Agreements, including each and every term included in the May 2005 Settlement Agreement. The Debtor has elected its remedy: it has chosen to affirm the Lease and License Agreement, in full, and with the May 2005 Settlement Agreement fully intact, through assumption.

Whether viewed as a matter of estoppel, as the District Court found in *In re Coudert Bros.*, or as a matter of election of remedies, as the court found in *SOFI Classic*, the Debtor's rescission claim should be barred.

    ii.    *Statutory Construction and Congressional Intent*

*In re Coudert Bros.* and *In re Superior Toy & Manuf. Co., Inc.*, also demonstrate the self-serving and entirely one-sided nature of the Debtor's August 14, 2009 letter brief, and how the Debtor's arguments cannot withstand scrutiny.

The primary thrust of the Debtor's August 14 letter brief is that under the Code, debtors have a maximum of just 210 days to assume a lease for nonresidential real property and that debtors shouldn't be required to pursue claims for rescission to judgment within that period of time. Rather, the Debtor implies that the statutory deadline should be set aside as an inconvenience; the Debtor suggests that the Court should disregard the 210 day limitation put in place by Congress and, in effect, return to what was common practice before the limitation was put in place. This is implicit in the Debtor's argument. The Debtor contends that a debtor can seek to assume "something" within the 210 day period, but doesn't have to commit to what that "something" is, and that a landlord for nonresidential real estate isn't entitled to know "what" is being assumed for an extended period of time while litigation over a partial rescission claim remains pending.[4]

---

[3] Although a separate and distinct concept from estoppel or election of remedies, New York law provides that the mere existence of a legal claim for damages also bars the assertion of the claim for rescission, as is noted in ESB's August 14th letter brief at pp. 1-3 and the footnotes and case citations therein.

[4] It is only in the awkward or unique circumstance presented here – a claim to rescind only part of a contract – that rescission is even an issue at the assumption stage of a case. If the entire contract is rescinded, there is no

The Debtor's argument is flawed on many levels. First, it ignores the statutory text. The 210 day limitation is fixed and absolute. Whether the 210 day limitation is burdensome on debtors is not a relevant consideration. Nor is the question of whether a 210 day limitation is even prudent. The fact of the matter is that the limitation exists, and the Debtor did not take action to litigate its rescission claim to conclusion before the 210 days expired. A clever attempt at an end-run around the 210 day limitation is not the answer to how rescission claims should be handled; rather, the answer is to handle those claims on an expedited basis consistent with their importance and the statutory deadline.

Second, the Debtor's argument ignores the fact that the requirements for assumption are not in place for the protection of debtors alone; to the contrary, those requirements protect landlords and contract counterparties as much as, if not more so than, debtors. The District Court in *In re Coudert Bros.* commented that "if a debtor in bankruptcy assumes a contract, it must honor its obligations under that contract." *In re Coudert Bros.* at p. 7. This is consistent with Congressional intent of protecting a debtor's contract counterparties through the assumption process. As the Court noted in *In re Superior Toy & Manuf., Co., Inc.*, both the House and Senate Reports for the Bankruptcy Reform Act of 1978 stated: "'If the trustee is to assume a contract or lease, the court will have to insure that the trustee's performance under the contract or lease gives the other contracting party *the full benefit of his bargain.*'" *Id.* at 1174 (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 59 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5845; H.R. Rep. No. 595, 95th Cong., 2d Sess. 348 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6304-05) (emphasis supplied); *see also In re Ionosphere Clubs, Inc.*, 85 F.3d at 999 (citing *In re Superior Toy & Manuf. Co., Inc., supra*). Viewed alongside Congressional intent, the Debtor's arguments fall flat.

C. State Law Concepts Bar the Debtor's Rescission Claim

In *In re Coudert Bros.*, the District Court found that state law principles governed the contractual relationship between the parties in the post-assumption context, and held that a state law avoidance action was barred by assumption of the contract. The same result is warranted here.

After argument on assumption of the Lease and License Agreement, the Court invited letter briefs regarding the impact of state law on the Debtor's claim for rescission in the post-assumption context. Both ESB and the Debtor submitted letter briefs.

The Debtor's letter brief contained no analysis of the state law concepts of affirmance and ratification which were singled out by the Court.

---

assumption. If the entire contract is assumed, there is no remaining claim for rescission. It is only when an effort to combine the benefits of both approaches is present that this issue arises.


ESB's letter brief detailed the manner in which assumption of a contract under the Bankruptcy Code is the functional equivalent of the New York state law concepts of affirmance and ratification of a contract. This characterization is important: affirmance or ratification makes a difference and precludes avoidance actions, such as the Debtor's claim for rescission.

It is important to note what qualifies as an affirmance: the bar is set relatively low. The rule is stated in such a way as to prevent clever wordplay by those who continue to accept the benefits under a contract, but would then argue that they never gave up a right of rescission because they never "affirmatively affirmed." The Restatement of Contracts, § 380, provides that a contract is affirmed where the party with power to avoid the contract simply "acts with respect to *anything* that he has received *in a manner inconsistent with disaffirmance.*" *See* ESB's August 14, 2009 letter brief at p. 2 (emphasis supplied); *see also Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 850 F. Supp. 1199, 1212-13 (S.D.N.Y. 1994) (noting actions inconsistent with disaffirmance standard). Here, that standard is met.

The Debtor has assumed the contract. The Debtor's argument in support of assumption included the Debtor's concession that it wanted to assume the Lease and License Agreement even if the terms of the May 2005 Settlement Agreement were included. The Debtor demonstrated to the Court's satisfaction that assumption with May 2005 Settlement Agreement in place was an exercise of good business judgment by the Debtor. ESB is now required, by order of the Court, to continue to provide the Debtor each and every one of the services ESB is required to provide under the terms of the May 2005 Settlement Agreement. The Debtor chose this course of action. The Debtor's recently-filed plan and disclosure statement demonstrate that the Debtor intends to continue receiving the benefits of the May 2005 Settlement Agreement. The Debtor has been taking advantage of these benefits for more than 5 years, and continues to do so each and every day. The Debtor's actions have been and continue to be completely inconsistent with disaffirmance.

The sole argument the Debtor can make in opposition to this point is that the Debtor has *asserted* a rescission claim. But that misses the point. The question is not whether, *despite* the fact that the Debtor has done a number of things *inconsistent with disaffirmance*, the Debtor has nonetheless tried to retain litigation upside for a potential recovery. Rather, the relevant question is whether, through the Debtor's actions, the Debtor has done *anything inconsistent with disaffirmance*. The Debtor has.

Based upon state law theories of affirmance and ratification, and consistent with the analysis in *In re Coudert Bros.*, the Debtor's claim for rescission should be barred.

Conclusion

The issue before the Court arises through a unique set of facts. It is only in the context of a partial rescission claim in the post-assumption context that this issue is presented. If complete rescission is sought, there will be no assumption. If complete assumption is sought, there will be no rescission. It is only where a debtor seeks to claim the benefits of both scenarios at the expense of the other party that the issue now before the Court is brought into focus.

Through its Motion for Summary Judgment and Dismissal, and post-assumption letter briefs, ESB has demonstrated that the Debtor's rescission claim should fail for a number of independent reasons, each of which can be determined by the Court as a matter of law. *In re Coudert Bros.* provides an analytical framework through which those legal arguments can be viewed. As in *In re Coudert Bros.*, this case involves a modified contract and there was only one contract for the Debtor to assume. As in *In re Coudert Bros.*, estoppel is appropriate based upon the Debtor's actions. As in *In re Coudert Bros.*, state law principles bar the assertion of an avoidance action; here, those state law concepts are affirmance and ratification of a contract. These dispositive arguments are in addition to the other points made by ESB in its motion for summary judgment, including the point that a rescission claim must fail where an adequate remedy exists at law, and that damages are available here.

Whether viewed through the lens of ratification, affirmance, modified contract principles, estoppel, election of remedies or preclusion of an equitable remedy as a result of an adequate remedy being available at law, the Debtor's claim for rescission must fail. This is particularly appropriate in the post-assumption context because, at the Debtor's request, the Court has entered an order requiring ESB to continue to provide the Debtor all the benefits under the Lease and License Agreement, including those included in the May 2005 Settlement Agreement.

For each of the foregoing reasons, ESB respectfully requests that the Court enter an order providing that the Debtor's claim for rescission is barred, or in the alternative that estoppel prevents the Debtor's continued pursuit of this claim.

Thank you for your consideration.

Respectfully,

William C. Heuer

cc: Mark Frankel, Esq.
    Charles A. Stewart, III, Esq.